## LAZARUS v. PHELPS.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF TEXAS.

No. 225. Argued and submitted January 23, 24, 1894. — Decided March 5, 1894.

An owner of grazing land in Texas, who stocks his land with cattle greatly in excess of the number which can be fed upon it, and permits them to go on and occupy and feed from the grass growing upon unoccupied land of a neighboring proprietor, with no separating fence, becomes liable to the latter for the rental value of his land so occupied.

THIS was an action brought in the Circuit Court of the United States for the Northern District of Texas, September 17, 1888, by William Walter Phelps, to recover of the plaintiff in error, Sam. Lazarus, the rental value of 176,000 acres of land in Texas, from April 15, 1887, at eight cents per acre per annum. The facts of the case, as shown by the pleadings and proofs, were substantially as follows:

In 1882 Phelps's vendor leased these lands, the sections of which alternated with sections owned by the Texas public school fund, to the firm of Curtis and Atkinson for five years, at two cents per acre, for grazing purposes. It was agreed in the contract of lease that all improvements made by the lessees should become the property of the lessor at the expiration of the lease. Curtis and Atkinson, in conjunction with adjoining owners, built a fence around the north, east, and west sides of their land. These fences included the school sections as well as those of Phelps. They did not separate the sections leased by them from the alternate school sections by fence, nor did they apply for a lease of these alternate sections from the State until June 12, 1887. Before the lease was granted, however, Curtis and Atkinson sold nearly all the cattle and horses owned by them on the enclosure to Sam. Lazarus, plaintiff in error and defendant below. Lazarus applied to the State for a lease of these alternate school lands, and, in September, 1887, a lease was delivered to him to take effect from the date of the application of Curtis and Atkinson, June 12, 1887. There was a penalty under the law of Texas for using the public lands without a lease.

Phelps became the owner of 168,300 acres April 15, 1887, and Curtis and Atkinson held under him as tenants at will up to the date of the sale of their stock. After the purchase of this stock by Lazarus, some negotiations were entered into with Phelps for a lease of the lands, but nothing came of them. Subsequently he secured the lease of the alternate school sections to the amount of 162,270 acres.

In the fall of 1887, the owners of the land on the south of these sections in dispute erected a fence dividing their lands from those of Phelps, thus entirely enclosing the 168,300 acres

belonging to Phelps and the alternating school sections in one continuous tract of land.

During the tenancy of Curtis and Atkinson they had erected two tanks, one upon the land of Phelps. The location of the other was not proven. These tanks were subsequently used by Lazarus. After the purchase by defendant of the stock of Curtis and Atkinson, he contracted to pasture upon this land, besides his own stock, one herd of 3500 head, for which he received $5000 for the first year, and $1.65 per head until purchased by him in 1889; and 3000 calves for which he received $2500. The cattle owned and controlled by Lazarus were not confined to the school sections leased by him, but grazed upon the lands of Phelps; and the undisputed proof was that the entire tract was overstocked, but in no other way than by having his cattle in this enclosure, did Lazarus prevent the owner of the 168,300 acres from taking possession or from grazing other stock thereon.

Upon this state of facts and proof as to the rental value of the land, Phelps secured a verdict and judgment for $8417. The defendant thereupon sued out this writ of error.

*Mr. Henry C. Coke,* for plaintiff in error, submitted on his brief.

*Mr. Leigh Robinson* for defendant in error.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

But a single error is assigned to the action of the court below, and that is to the charge that defendant was liable to the plaintiff for the value of the use and occupation of the plaintiff's land, if he had in the common enclosure more cattle than were sufficient to consume the grass on the lands leased of the State of Texas by the defendant.

The defendant, upon the contrary, requested the court to charge that "in Texas, the law is that the owner of stock is not required to keep them in an enclosure, or to prevent them

from ranging on the land of others; and that the owner of land trespassed upon by cattle cannot recover from the owner of the cattle damages for the trespass, unless his land is fenced;" and further, "that to entitle the plaintiff to recover in this suit you must believe from the evidence that the plaintiff's lands were fenced from those leased by defendant. If there was a common enclosure around the lands of plaintiff and those leased by defendant and no fence separating such lands, then the plaintiff cannot recover." The views of the court below, concisely stated, are contained in the instruction that if the defendant kept the enclosure so overstocked, as plaintiff claimed, then he is liable for the value of the rent of plaintiff's lands. The request of defendant, taken in connection with the instruction given, presents the respective views of the law entertained by counsel upon either side, and upon which the case turned.

The rule of the common law was admitted to be that a land owner is not bound to fence his land against the cattle of others. The owner of such cattle must confine them to his own land, and will be liable for trespasses committed by them upon the unenclosed lands of others. This rule, however, has been modified in Texas by Revised Statutes of Texas, article 2431, which enacts that "every gardener, farmer, or planter shall make a sufficient fence about his clear land under cultivation at least five feet high, and make such fence sufficiently close to prevent hogs from passing through the same." And by article 2434: "If it shall appear that the said fence is insufficient, then the owner of such cattle, horses, hogs, or other stock shall not be liable to make satisfaction for such damages." Construing this statute, the Supreme Court of Texas held, in *Sabine & East Texas Railway* v. *Johnson*, 65 Texas, 389, 393, that "since the fence law of 1840 the owner of unenclosed land has no right of action for the intrusion of stock upon it. . . . The appellee had no right to graze his cattle on these leagues, but in doing so was guilty of no actionable wrong. In letting his stock range on this land he asserted no right in the land and acquired none." See also *Pace* v. *Potter*, 85 Texas, 473, 476. This custom of permit-

ting cattle to run at large without responsibility for their straying upon the lands of others was also recognized by this court in *Buford* v. *Houtz,* 133 U. S. 320.

The object of the statute above cited is manifest. As there are, or were, in the State of Texas, as well as in the newer States of the West generally, vast areas of land over which, so long as the government owned them, cattle had been permitted to roam at will for pasturage, it was not thought proper, as the land was gradually taken up by individual proprietors, to change the custom of the country in that particular, and oblige cattle owners to incur the heavy expense of fencing their land, or be held as trespassers by reason of their cattle accidentally straying upon the land of others. It could never have been intended, however, to authorize cattle owners deliberately to take possession of such lands, and depasture their cattle upon them without making compensation, particularly if this were done against the will of the owner, or under such circumstances as to show a deliberate intent to obtain the benefit of another's pasturage. In other words, the trespass authorized, or rather condoned, was an accidental trespass caused by straying cattle. If, for example, a cattle owner, knowing that the proprietor of certain lands had been in the habit of leasing his lands for pasturage, should deliberately drive his cattle upon such lands in order that they might feed there, it would scarcely be claimed that he would not be bound to pay a reasonable rental. So, if he lease a section of land, adjoining an unenclosed section of another, and stock his own section with a greater number of cattle than it could properly support, so that, in order to obtain the proper amount of grass, they would be forced to stray over upon the adjoining section, the duty to make compensation would be as plain as though the cattle had been driven there in the first instance. The ordinary rule that a man is bound to contemplate the natural and probable consequences of his own act would apply in such a case. In *St. Louis Cattle Co.* v. *Vaught,* 1 Texas Civil Appeals, 388, 390, the court observed : "This doctrine, however, does not authorize the owner of cattle by affirmative conduct on his part to appropriate the

use of such lands to his own benefit. He will not be permitted thus to ignore the truth that every one is entitled to the exclusive enjoyment of his own property. In this case the appellant, by means of fences constructed or maintained by it, enclosed the land of the appellee in such manner as to reap from it those benefits, which as a rule are incident exclusively to ownership. The use and enjoyment of the property under such circumstances import necessarily the idea of liability." In this case it was held that, where the owner of several tracts of land, in enclosing them within a larger enclosure, necessarily enclosed a tract belonging to another, this was such an appropriation of the lands of such person as rendered the defendant liable for the reasonable value of the tract so enclosed. See also *Kerwhacker* v. *Cleveland &c. Railroad*, 3 Ohio St. 172; *Union Pacific Railway* v. *Collins*, 5 Kansas, 167, 177; *Larkin* .v. *Taylor*, 5 Kansas, 433; *Delaney* v. *Errickson*, 11 Nebraska, 533; *Otis* v. *Morgan*, 61 Iowa, 712; *Willard* v. *Mathesus*, 7 Colorado, 76.

In the case under consideration, the testimony showed that for five years before the plaintiff acquired title to the lands in question, they had been leased to Curtis and Atkinson for pasturage purposes, at a rental of two cents per acre, with the stipulation that all permanent improvements erected by the lessees during the term should, at the end of the term, remain on the leased lands, and become the property of the lessor; and that they were about leasing the alternate sections of school lands when they failed; that in September, 1887, defendant, who, in the June previous, had bought out the stock of Curtis and Atkinson, together with all their interest in the fences, corrals, water tanks, (one of which was upon plaintiff's land,) and other property within the common enclosure of plaintiff and the public school lands, leased of the State the alternate sections of school lands within this enclosure for four years at four cents per acre. It seems, too, that negotiations were had, after defendant bought the cattle and horses from Curtis and Atkinson, between him and the plaintiff's agent respecting the lease of plaintiff's lands, but no agreement was reached between the parties as to the price to be paid, and the

same were not leased by the defendant or held by him as tenant of the plaintiff. The testimony further showed that, from the time defendant obtained the lease of the State until the date of the trial, the stock owned or controlled by him was more than sufficient to consume the grass on the plaintiff's lands, and the sections alternating therewith leased by the defendant from the public school fund. Defendant not only pastured his own stock upon these lands, but 3500 head of cattle owned by one Evans, for which he received $5000 the first year, and for the remaining period up to the year 1889, when he purchased them, $1.65 per head, as well as $2500 for the pasturage of 3000 calves belonging to another party.

These facts certainly showed an intent on the part of the defendant to avail himself of the pasturage of plaintiff's lands, and fully authorized the instruction of the court to the jury that, if the defendant overstocked the enclosure, he should be held liable to the plaintiff for the rental value of the lands. In such case the law raises an implied promise to pay a reasonable sum for the use and occupation of the lands, even though negotiations for a new lease had proven unsuccessful. *Schuyler* v. *Smith*, 51 N. Y. 309.

There was no error in the action of the court below, and its judgment is, therefore,

*Affirmed.*