MONROE, Respondent *v.* CANNON, Appellant.

                              [No. 1245.]    6 1 Pac. 863

[Submitted June 22, 1900.    Decided July 16, 1900.]

*Trespass — Assumpsit — Pleading — Willful and Deliberate Herding of Cattle on Unfenced Pasture of another.*

1.  In an action in assumpsit a complaint contains all the averments necessary to the creation of a legal liability on the part of the defendant, which alleges, ownership of the land in the plaintiff; ownership of the sheep in the defendant; the fact that the sheep were herded and pastured on plaintiff's land during a stated period of time; and that such pasturage was worth a stated amount; for from these facts, if proved, the law creates an implied promise and legal liability, although defendant's sheep were *wrongfully* on plaintiff's land.

2.  Where defendant caused his sheep to be herded on what he knew to be plaintiff's pasture, though the same was unfenced, an action will lie for the value of the grass destroyed by the sheep, notwithstanding Political Code, Sec. 3258, providing that, if an animal break into any fenced inclosure, the owner of the animal shall be liable for damages sustained, since such statute, permitting recovery only where the land is fenced, applies to trespasses committed by animals running at large without the knowledge of the owner, and not to a case where one knowingly and willfully appropriates the use of another's land.

*Appeal from District Court, Lewis and Clarke county; S. H. McIntire, Judge.*

Action by Burt Monroe against Henry Cannon.  From a judgment in favor of plaintiff, defendant appeals.  Affirmed.

Statement of the Case.

This was an action in assumpsit, brought in the district court of Lewis and Clarke county by Burt Monroe, to recover of the defendant, Henry Cannon, the sum of $600, alleged to be due plaintiff for pasturage, in that for about ten days, end-

ing on or about the 8th day of December, 1895, defendant herded and pastured his sheep, to the number of about 2,300, upon the land and pasture of plaintiff described in the complaint. The facts of the case, as shown by the pleadings and proof, were substantially as follows: At a time long prior to the bringing of this action, the appellant and his predecessors in interest enclosed by a fence something like 10 sections of land in Cascade county. Part of this land so enclosed belonged to appellant, and a portion thereof was a part of the public domain. To 120 acres of this public land so inclosed by appellant's fence the plaintiff acquired title. During the spring and summer of 1895, plaintiff built ditches to this land and irrigated it; and the testimony shows that, at the time the sheep of the appellant were driven and pastured thereon, this land of plaintiff had upon it about 90 tons of blue-joint grass, of the value of from four to five dollars per ton. While it is true that, at the time of the injury complained of, plaintiff's land was unfenced, yet it appears from the evidence that its boundaries were marked by post holes, by ditches, and by stakes placed at intervals along the exterior limits of the land. It further appears from the evidence that the band of sheep which were herded and pastured on plaintiff's land were at that time in charge of a herder in the employ of the appellant and that the herder knew the boundaries of plaintiff's land, and admitted that he had been repeatedly asked, and finally had been ordered, by plaintiff's agents, to keep the sheep in his care off of and away from the premises of plaintiff. This the herder refused to do, saying that he had been told to herd upon plaintiff's land, by one Morgan, foreman of defendant. The result was that the grass upon plaintiff's land was eaten up and destroyed. It further appears from the evidence that when the defendant, Cannon, was informed by plaintiff of the acts of his herder and of the damage done, the defendant approved of such acts on the ground that the land was unfenced. Trial was by jury. Verdict for plaintiff for $300. Defendant appeals from the judgment, and from the order denying his motion for a new trial.

*Mr. Massena Bullard*, for Appellant.

Under the common law a man's premises were presumed to be enclosed, because it was held that whether he had a fence or other visible enclosure there was upon his line such a legal barrier as to protect him in his possession against trespass. And this legal barrier was more formidable than any sort of artificial fence or other enclosure that could be constructed, so that if animals belonging to B went upon the unenclosed lands of A and committed damage, B would be liable therefor. But where the statute has provided the necessity of enclosing lands by a substantial fence or something equivalent thereto, and has provided for the payment of damages for trespass by animals upon lands enclosed by a legal fence, such provisions are held to negative the right to sue for damages where the premises are not enclosed by a legal fence; and in order to maintain an action it is necessary to allege and prove that the premises upon which the trespass is alleged to have occurred were enclosed by a legal fence. This position has been maintained in a number of states where legal fence laws are in force; and we believe that it is so maintained wherever such laws are in force. Among the states in which the question has been presented and the position above taken assumed are (Colorado: *Nuckolls* v. *Gaut*, 21 Pac. Rep. 41; *Morris* v. *Fraker*, 5 Col. 425; Oregon: *Walker* v. *Bloomingcamp*, 43 Pac. 175; *Bilen* v. *Paisley*, 21 Pac. Rep. 934; *Campbell* v. *Bridwell*, 5 Or. 311, *French* v. *Creswell*, 11 Pac. Rep. 62; California: *Waters* v. *Moss*, 73 Am. Dec. 561; *Comerford* v. *Dupuy*, 17 Cal. 308; Illinois: *Headen* v. *Rust*, 39 Ill. 186; *Oil* v. *Rowley*, 69 Ill. 469; *Stoner* v. *Shugart*, 47 Ill. 76; *Misner* v. *Lightfall*, 13 Ill. 609; Kansas: *Darling* v. *Rogers*, 7 Kas. 592; *Larkin* v. *Taylor*, 5 Kan. 434; *U. P. R. R. Co.* v. *Hand*, 7 Kan. 380; New York: *Rose* v. *Bunn*, 21 N. Y. 275; *Bradley* v. *Buffalo*, 34 N. Y. 427; Nevada: *Chase* v. *Chase*, 15 Nev. 262; Nebraska: *Delaney* v. *Erickson*, 10 Neb. 492; North Carolina: *Burgwyn* v. *Whitfield*, 81 N C. 261; *Jones* v. *Witherspoon*, 78 Am. Dec. 263; Missouri: *Moore* v. *White*, 45 Mo. 206; Ohio: *Kerwhacker*

v. *Cleveland, C. & C. R. Co.* 62 Am. Dec. 246; *Cleveland C. & C. R. Co.* v. *Elliott*, 40 Ohio St. 474; Arkansas: *Little Rock & Ft. S. R. Co.* v. *Finley*, 37 Ark. 562; Alabama: *Lee Co. v. Yarborough*, 85 Ala. 590; *Wilhite* v. *Speakman*, 79 Ala. 400. Iowa: *Frazier* v. *Nortinus*, 34 Ia. 82; *Wagner* v. *Bissel*, 3 Ia. 396; *Camp* v. *Flaherty*, 28 Ia. 520; Indiana: *Myers* v. *Dodd*, 68 Am. Dec. 624; *Clark* v. *Stipp*, 75 Ind. 114; Texas: *Clarenden* v. *McClelland*, 31 L. R. A. 669, 22 L. R. A. 105; Pennsylvania: *Gregg* v. *Gregg*, 55 Pa. 227.)

The theory upon which the courts in some of the states have held that without reference to the existence of a statute prescribing a legal fence the common law doctrine with reference to trespass by animals upon unenclosed lands does not prevail is that the common law is not applicable to those states. (*Waters* v. *Moss*, 12 Cal. 535.)

Long prior to the adoption of the constitution of the State of Montana, the territory embraced within its boundaries was used largely for the herding of immense bands of cattle, sheep and horses; marks and brands were provided for certain kinds of animals; fence laws were enacted and enforced, and the statute provided under what circumstances damages should be recoverable for injuries to crops. All these provisions negative the idea that people were required to keep their animals enclosed or that they should be liable for trespass upon unenclosed premises. This position we apprehend would be sustained by the court were the question being presented now for the first time to the courts of Montana; but the Supreme Court of Montana, has already considered and decided this identical question. (*Smith* v. *Williams*, 2 Mont. 195; *Fant* v. *Lyman*, 9 Mont. 61.)

*Mr. F. E. Stranahan*, for Respondent.

MR. JUSTICE WORD, after stating the case, delivered the opinion of the court.

Appellant concedes the respondent's ownership of the land, the appellant's ownership of the sheep, and the value of the

pasturage. That respondent's land was unfenced is undisputed.

To appellant's objection that the complaint is insufficient, it is enough to say that the complaint contains all the averments necessary to the creation of a legal liability on the part of the appellant. It alleges ownership of the land in the respondent; ownership of the sheep in the appellant; the fact that they were herded and pastured on respondent's land during a stated period of time; and that such pasturage was worth the amount stated in the complaint. From these facts, if proved the law creates an implied promise, and a legal liability, although the appellant's cattle were *wrongfully* on the respondent's land. (*De La Guerra* v. *Newhall*, 55 Cal. 21; *Fratt* v. *Clark*, 12 Cal. 89; *Roberts* v. *Evans*, 43 Cal. 380.)

The main contention of appellant is that no action lies, and no damages can be recovered, for trespass by animals on uninclosed lands; and in support of his position appellant cites the cases of *Smith* v. *Williams*, 2 Mont. 195; *Fant* v. *Lyman* 9 Mont. 61, 22 Pac. 120, and many others of like tenor from other states. It is to be observed that most, if not all, of the decisions to which appellant directs our attention rest upon statutory provisions the same as, or similar to, section 3258, of the Political Code, which is as follows:

"If any cattle, horse, mule, ass, hog, sheep, or other domestic animal break into any enclosure, the fence being legal, as hereinbefore provided, the owner of such animal is liable for all damages to the owner or occupant of the inclosure which may be sustained thereby. This section must not be construed so as to require a legal fence in order to maintain an action for injury done by animals running at large contrary to law."

The question now arises: To what extent have statutes like the one just cited limited the right of an owner, or of one in possession, of real property, to recover for trespasses committed upon it? "Every unwarrantable entry on another's soil the law entitles a trespass by *breaking his close*; the words of the writ of trespass commanding the defendant to show cause,—"*Quare clausum querentis fregit.*" For every man's

land is, in the eye of the law, inclosed and set apart from his neighbors; and that either by a visible and material fence, as one field is divided from another by a hedge, or by an ideal invisible boundary, existing only in the contemplation of law, as when one man's land adjoins to another's in the same field. And every such entry or breach of a man's close, carries necessarily along with it some damage or other; for if no other special loss can be assigned, yet still the words of the writ itself specify one general damage, viz. the treading down and bruising his herbage." (3 Bl. Comm. 209.)

"A man is answerable for not only his own trespass, but that of his cattle also; for if, by his negligent keeping, they stray upon the land of another (and much more if he permits, or drives them. on) and they there tread down his neighbor's herbage, and spoil his corn, or his trees, this is a trespass for which the owner must answer in damages." (Id. 211, 212.)

While admitting that such would· be the rights of respondent under the common law, appellant contends that the provisions of section 3258, Political Code, which makes the owner of any animal named therein liable for all damage such animal may do by breaking into an inclosure surrounded by a legal fence, negative the right to sue for damages, where the premises are not inclosed by a legal fence; and that, in order to maintain an action, it is necessary to allege and prove that the premises upon which the trespass was committed were inclosed by a lawful fence.

If, in the case now under consideration, the damage sustained by respondent had resulted from trespasses committed by cattle or sheep, or other animals named in the statute, lawfully at large and not under the direction or control of their owner, then appellant's position would be sound. But the evidence in this case presents a different question. Under the conditions disclosed by the record, what rights had respondent? If appellant is right, the respondent, although his grass had been destroyed by the deliberate act of appellant, was without remedy; silent acquiescence was all that was left to him. If appellant is cor-

rect, no man whose field, or pasture, or garden is not inclosed by a legal fence, is entitled to any protection under the law from the trespasses of any man who may desire to drive or herd his cattle or sheep upon it. If this is true in this case, it is true in any case where a man's land is not protected by a legal fence. Take the case of a field in cultivation, or of a garden adjacent to a home. It may be that the fence around each had for years served to keep all animals out, and yet was not as high or as strong as the law required. Can it be possible that any man is at liberty to tear down such a fence, drive his sheep or cattle within, that they may feed upon the contents, and escape all liability on the ground that no man has any right to complain of such injuries whose premises are not protected by a legal fence? Such, in our opinion, is not the law. And we are of opinion that under the evidence in this case the respondent's right to recover for the damage sustained by him is as clear as would be that of one whose fence had been torn down by another, and the fruits of his labor destroyed. If a man has the right to drive his sheep or cattle upon the uninclosed land of another, and to pasture them there, against the will and wishes of the owner, it follows that he would have the right to go upon the same land, to mow the grass growing thereon, and appropriate it to his own use. The mistake appellant makes is in concluding that the statute providing for and defining a lawful fence, and giving damages for the trespass of certain animals upon premises inclosed by such a fence, does not modify, but abrogates the rights existing under the common law.      .

Such was the contention in the case of *Harrison* v. *Adamson*, 76 Iowa, 338, 41 N. W. 34. In the opinion the court observed: "The allegations of the petition are to the effect that the defendant knowingly and willfully caused his cattle to be driven and kept upon plaintiff's land. Surely, the owner of uninclosed prairie land is not deprived of his rights in it by any statute of the state in regard to fences, or which authorizes another to use it for pasturage against the owner's will. If he may so use it, why may he not use it for cultivation?

There is nothing to be found in the statutes of this state, or the decisions of this court, depriving the owner of uninclosed land of the profits of the grass and pasture thereon, and exempting one who, against his consent, appropriates the grass or pasture, from liability therefor to the owner. The laws of the state provide that trespass is not committed when cattle which are running at large enter upon uninclosed land. But it is quite a different thing when cattle not running at large, but in the charge and under the control of a herdsman, the employe and agent of their owner, are driven and kept upon uninclosed land against the will of the landowner, and with full knowledge of the owner of the cattle. In that case the trespasser takes and appropriates the use of the land for pasture, and is held by the law liable therefor. In the other case, where the cattle, being at large without the act or knowledge of the owner, go upon the land, the owner is not liable, for the reason that he committed no trespass, and has not knowingly appropriated the use of the land.''

A like contention as to the necessity of a fence, in order to give a right of action was made in the case of *Powers* v. *Kindt*, 13 Kan. 74, an action of trespass to recover for injuries committed by defendant's cattle to growing crops of plaintiff. The court, in an opinion by Brewer, J., say: ''It is insisted that, because the findings show that Kindt had no legal fence, or inclosure around his premises, he was not entitled to recover. But the court also finds that Power's cattle were driven and herded upon the premises of Kindt against his wishes and consent, and while so driven and herded, destroyed the property as alleged; and as a conclusion of law from the various facts found, that Power's was guilty of a wanton and willful want of care. This brings the case within the rule laid down in *Larkin* v. *Taylor*, 5 Kan. 433, 446. It is claimed that because the plaintiff's in error employed herders to watch their cattle, and keep them off from other parties' crops and premises, they could not be held liable where they would not have been held liable if they had simply turned them loose, and they had roamed upon Kindt's premises, and done the damage

complained of. This ignores the fact that the court finds that these cattle were driven and herded upon Kindt's premises which brings in the element of gross negligence or wanton and willful want of care.''

The case of *Lazarus* v. *Phelps,* 152 U. S. 81, 14 Sup. Ct. 477, 38 L. Ed. 363, an appeal from the circuit court for the Northern district of Texas, was much like the one now under consideration. The defendant in that action (as did the defendant in this) requested the court to charge that ''the law is that the owner of stock is not required to keep them in an inclosure, or to prevent them from ranging on the land of others; and that the owner of land trespassed upon by cattle cannot recover from the owner of the cattle damages for the trespass, unless his land is fenced,'' and further, ''that to entitle the plaintiff to recover in this suit you must believe from the evidence that the plaintiff's lands were fenced from those leased by defendant. If there was a common inclosure around the lands of plaintiff and those leased by defendant, and no fence separating such lands, then the plaintiff cannot recover.'' The court in its opinion in the case, said: ''The object of the statute [requiring the fencing of lands] is manifest. As there are, or were, in the state of Texas, as well as in the newer states of the west generally, vast areas of land over which so long as the government owned them, cattle had been permitted to roam at will for pasturage, it was not thought proper, as the land was gradually taken up by individual proprietors to change the custom of the country in that particular, and oblige cattle owners to incur the heavy expense of fencing their lands, or be held as trespassers by reason of their cattle accidentally straying upon the land of others. It could never have been intended, however, to authorize cattle owners deliberately to take possession of such lands and depasture their cattle upon them, without making compensation, particularly if this were done against the will of the owner, or under such circumstances as to show a deliberate intent to obtain the benefit of another's pasturage. In other words, the trespass authorized, or rather condoned,

was an accidental trespass caused by straying cattle. If, for example, a cattle owner, knowing that the proprietor of certain lands had been in the habit of leasing his lands for pasturage should deliberately drive his cattle upon such lands in order that they might feed there, it would scarcely be claimed that he would not be bound to pay a reasonable rental. So, if he lease a section of land, adjoining an uninclosed section of another, and stock his his own section with a greater number of cattle than it could properly support, so that, in order to obtain the proper amount of grass, they would be forced to stray over upon the adjoining section, the duty to make compensation would be as plain as though the cattle had been driven there in the first instance. The ordinary rule that a man is bound to contemplate the natural and probable consequences of his own act would apply in such case,'' — citing the following cases: *St. Louis Cattle Co.* v. *Vaught*, 1 Tex. Civ. App. 388, 390, 20 S. W. 855; *Kerwhacker* v. *Railroad Co.*, 3 Ohio St. 172; *Union Pac. Railway Co.* v. *Rollins*, 5 Kan. 167, 177; *Larkin* v. *Taylor*, 5 Kan. 433; *Delaney* v. *Errickson*, 11 Neb. 533, 10 N. W. 451; *Otis* v. *Morgan*, 61 Iowa, 712, 17 N. W. 104; *Willard* v. *Mathesus*, 7 Colo. 76, 1 Pac. 690; to which may be added *Erbes* v. *Wehmeyer*, 69 Iowa, 85, 28 N. W. 447; *Bedden* v. *Clark*, 76 Ill. 338; and *Norton* v. *Young*, 6 Colo. App. 187, 40 Pac. 156.

A number of the cases cited by appellant refer to the distinction pointed out in *Lazarus* v. *Phelps, supra,* and recognize the rule there laid down. See *Nuckolls* v. *Gaut*, 12 Colo. 361, 21 Pac. 41; *Walker* v. *Bloomingcamp*, 34 Oregon 391, 43 Pac. 175; *Chase* v. *Chase*, 15 Nev. 259, 263; *Larkin* v. *Taylor*, 5 Kan. 434; *Bileu* v. *Paisley*, 18 Oregon 47, 21 Pac. 934.

The case of *Smith* v. *Williams*, 2 Mont. 195, is not at variance with the views herein expressed. That was an action in the nature of trespass to recover damages alleged to have been suffered by reason of the cattle of defendant breaking into the inclosure of plaintiff and destroying his grain. The evidence in the case was not properly before the court, and

was not considered.   Upon the theory that the cattle were lawfully at large, and were not driven or herded upon the premises of plaintiff by defendant, the ruling of the court in this case can be upheld.

The case of *Fant* v. *Lyman*, 9 Mont. 61, 22 Pac. 120, seems to conflict with the views of the court in the present case. We find, however, that the court, in that case used the following language:   "Section 1119 of the Fifth Division of the Compiled Statutes subjects the owners of animals to liabilities for any damage done by them by breaking into the lands of another inclosed by a lawful fence.   This section negatives the liability of the owner when animals lawfully at large, as in this instance, stray on uninclosed lands in quest of food or pasturage."   If the facts in the case were as indicated in that part of the opinion just given, then *Fant* v. *Lyman*, *supra*, is in accord with the conclusions reached herein.

In the case before us, the complaint was amended so as to charge that the defendant "willfully and maliciously" herded and pastured his sheep upon plaintiff's land.   While there was enough evidence of willfulness and malice on the part of the defendant to go to the jury, yet exemplary damages were not asked, and it is admitted that a verdict for the actual damages only was returned.   We may say, further, that the action being in contract, the tort having been waived, the original complaint was sufficient, and the amendment made thereto unnecessary.

The judgment and order appealed from are accordingly affirmed.                                                *Affirmed.*