## JONES v. BLYTHE.

1. ANIMALS—RUNNING AT LARGE—FENCE LAWS. Though under Revised Statutes 1898, section 20, providing that if sheep, etc., shall trespass on the premises of any person, except where such premises are not inclosed by a lawful fence in counties in which a fence is required by law, the party aggrieved may recover damages by action or by distraining, as therein provided, an owner of sheep is not liable for damages resulting from an unintentional trespass on uninclosed lands in a county in which a fence law is in force, yet he is liable where he intentionally drives his sheep on such land.

2. SAME—TRESPASSING ANIMALS—EVIDENCE—SUFFICIENCY. Evidence in an action for damages caused by sheep trespassing on premises *held* to show that the owner of the sheep, after being notified to keep them off the premises, willfully drove them thereon and kept them there till they had eaten and destroyed much of the grass.[1]

APPEAL from District Court, Box Elder County; W. W. Maughan, Judge.

Action by William Jones against John Blythe. Judgment for plaintiff, and defendant appeals.

AFFIRMED.

*Maginnis & Corn* for appellant.

*J. D. Call* for respondent.

---

[1] Buford v. Houtz, 5 Utah 591, 18 Pac. 633.

It is well settled that in this section of the country the principle does not prevail that a man is bound to keep his own stock confined within his own grounds, or else be liable for their trespasses upon the unenclosed grounds of his neighbors. But the owners of domestic animals may permit them to run at large and pasture upon the public lands and upon the unenclosed lands of private individuals without let or hindrance. (*Buford v. Houtz,* 133 U. S. 320, 5 Utah 591, 18 Pac. 633; *Kerwhacker v. Railroad,* 3 Oh. St. 175; *Seely v. Peters,* 10 Ill. 130; *Logan v. Cedney,* 38 Cal. 579.)

"A person has no right to drive his cattle upon uninclosed or insufficiently fenced land of another, and if he does so it is a trespass for which the owner of the land may recover." (12 Am. & Eng. Enc. of Law [2d Ed.], 1045 and cases cited.)

"The owner of cattle who wilfully turns them on to the land of another without his consent is liable without regard to the question of fences and in some cases may be held criminally for such trespass." (2 Cyc. 398 and cases cited; 2 Am. Digest [Century Edition], col. 605, secs. 335, 338; *Martin v. Jacobson,* 3 Pac. [Cal.], 122; *Logan v. Gedney,* 38 Cal. 580.)

McCARTY, J.

This is an appeal by the defendant from a judgment rendered in the district court of Box Elder county in favor of plaintiff for damages alleged to have been caused by defendant's sheep trespassing upon and eating off and destroying the grass and herbage upon certain lands of plaintiff situated in the northwestern part of Box Elder county, this state. The land is described in the complaint as follows: "All of sections 29, 30, 31, and 32, township 14 N., of range 17 W., Salt Lake Meridian"—and is situated in what is known as "Cotton Thomas Basin." This basin has an area of about

twenty-five or thirty square miles, and is surrounded by mountains. At the time of the alleged trespass the land was partly inclosed by a fence, which extended along the eastern and northern boundary thereof. A few rods south of the southern boundary there was a line of fence posts extending east and west along the south side of the premises. There was no fence along the western line or boundary of the land. The premises were covered with different kinds of grass, brush, and herbage, upon which cattle and other animals fed and browsed. This land was used by plaintiff for grazing purposes, and during the summer season of each year he pastured thereon several hundred head of cattle. The complaint contains two causes of action. In the first cause of action it is alleged that the damage was caused between the 1st day of June and the 11th day of July, 1906; and in the second cause of action it is alleged that the trespass complained of was committed between the 1st day of June and the 15th day of July, 1905. The particular acts of trespass relied on for recovery in the first cause of action are alleged in the complaint as follows: "That at divers times, and upon each and every day between the dates herein alleged, the defendant, his agents, and employees, willfully trespassed upon said land by driving in and upon said land a large number of sheep, to wit, about six thousand head, and maintained camps and sheep beds, and herded said sheep thereon for and during all of said period of time, . . . and as a result thereof the said sheep ate, browsed, killed, and destroyed the grass, verdure, underbrush, and a large number of small trees growing on said land." It is further alleged that "plaintiff warned said defendant against driving and herding his said sheep upon said real estate, or permitting them to go thereon, and that defendant has threatened and still threatens to and will use force and violence against plaintiff if he attempts to keep said sheep from said premises." The allegations describing the alleged trespass are substantially the same in both causes of action. Defendant answered, and specifically denied each and every material allegation of the complaint, and as a further defense pleaded

an ordinance entitled "An ordiance defining a lawful fence in Box Elder county, state of Utah," which ordinance, the record shows was duly and regularly passed by the board of county commissioners of Box Elder county, and was at the time of the alleged trespass in full force and effect.

The evidence, without conflict, shows that plaintiff, long prior to the alleged trespass, notified defendant to keep off the land in question, and not to herd or bed his sheep thereon. On this point defendant testified in part as follows: "I remember a conversation with Mr. Jones [plaintiff and respondent herein]. It was about five or six years ago. He came and told me the sheep were on his land, and wanted me to keep them off. . . . He asked me if I would keep them off. I said, 'No;' that I would not; that he was trying to control too much country; that I did not believe he could take up the land in the shape he said he was doing." And again the defendant testified: "At the time charged that my sheep were upon this land I had no means of knowing where the sec.ions were, except by the posts and what fencing there was there." That the trespass was wilful and intentional, is shown by the testimony of defendant's witness R. C. Reid, who testified in part as follows: "I have been Mr. Blythe's [defendant's] foreman for two years. Mr. Rice, Mr. Bronson, and Jess Jones came to the camp and asked me if I intended to run on those four sections of Jones.' . . . I told them that I intended to run upon the basin there. They asked me if I did not know what Jones claimed, and I said I knew he claimed inside of the posts, and that I was going to run in there, leaving a place for his horses. . . . Mr. Blythe told me to run in the basin there; . . . that he didn't think Jones had any land in there; and that he intended to feed in there." On cross-examination the witness stated that he was on the four sections of land in question with defendant's sheep in June, July, and August of 1905; that on one occasion two camps or beds were maintained there continuously for six days; and that the sheep could "go over in two days and take all the feed off pretty close." To the question, "You went on intentionally, did you?" he an-

swered, "I undoubtedly did, because I told the men to let the sheep feed up through there." As to the effect the herding and bedding of the sheep on the premises had on the grass and other vegetation growing thereon, Mr. Rice, who had charge of plaintiff's cattle and the land in question at the time of the trespasses complained of, testified (and his testimony is not denied) : "They [referring to defendant's sheep] were on the biggest part of the four sections. . . . Before they went on, the grass was good, and when they went off, the roots were all trampled down. . . . The whole country there, for at least three-quarters of a mile square, looked as though it had been harrowed when they left." The undisputed evidence also shows that cattle will not graze or feed on the same range where sheep in large numbers are kept and herded, and that when defendant drove his sheep on the land in question many of plaintiff's cattle left the premises. As stated by some of the witnesses: "The cattle commenced leaving just as soon as the sheep went on."

Appellant assigns as error the refusal of the court to give the following instruction: "It appears by the uncontradicted testimony in the case that at the time of the alleged trespass plaintiff's land was not inclosed by a lawful fence under the statutes of this state, and the jury are instructed to find the issues for the defendant." Error is also alleged because of the court's refusal to give other instructions asked for by appellant. As these additional requests involved only the same questions (presented in a different form) as are involved in the instruction above set out, we deem it unnecessary to further refer to them. The decisive question in the case is: Can an owner of live stock, in localities where there is a fence law in force, deliberately and intentionally invade the uninclosed lands of another, knowing such lands to belong to another, and pasture his stock thereon, without incurring liability for the damage caused thereby? Section 20, Revised Statutes 1898, so far as material here, provides:

"If any neat cattle, . . . sheep or swine shall trespass or do damage upon the premises of any person, except in cases where such premises are not inclosed by a lawful fence in counties where a fence is required by law, the party aggrieved, whether he be the owner or the occupant of such premises, may recover damages by an action at law against the owner of the trespassing animals, or by distraining and impounding said animals in the manner provided herein."

We think it is plain that the Legislature, by this statute, intended to take away all remedy by suit or impounding for damages caused by the stock of one party straying upon the uninclosed lands of another in counties where a fence law is required; and while it is true that, under the statute referred to, appellant would not have been liable for damages caused by an involuntary or inadvertent intrusion of his sheep upon the lands in question, the statute gave him no right to deliberately and intentionally drive his sheep, or to so direct their movement as to cause them to go, upon the lands in question, and keep them there against the will of the respondent. In other words, while the statute withholds from the owner of uninclosed lands, in counties where there is a fence law in force, the right to impound and hold for damages animals trespassing upon such lands, it certainly does not deprive the owner of the right to remove the trespassing animals therefrom; hence it necessarily follows that the owner may, by suit, collect damages for a wilful and malicious trespass, such as the evidence conclusively shows was committed in this case. This same question was involved in the case of *Lazarus v. Phelps,* 152 U. S. 81, 14 Sup. Ct. 477, 38 L. Ed. 363. The court, in construing a Texas statute similar to the statute under consideration, said:

"The object of the statute above cited is manifest. As there are, or were, in the state of Texas, as well as in the newer states of the West generally, vast areas of land over which, so long as the government owned them, cattle had been permitted to roam at will for pasturage, it was not thought proper, as the land was gradually taken up by individual proprietors, to change the custom of the country in that particular, and oblige cattle owners to incur the heavy expense of fencing their land, or be held as trespassers by reason of their cattle accidentally straying upon the land of others. It could never have been intended, however, to authorize cattle owners deliberately to take possession of such lands and pasture their cattle upon them without making

compensation, particularly if this were done against the will of the owner, or under such circumstances as to show a deliberate intent to obtain the benefit of another's pasturage. In other words, the trespass authorized, or condoned, was an.accidental trespass caused by straying cattle."

In the course of the opinion the court quotes with approval the case of *St. Louis Cattle Co. v. Vaught,* 1 Tex. Civ. App. 388, 390, 20 S. W. 855, 856, wherein it is said:

"This doctrine, however, does not authorize the owner of cattle by affirmative conduct on his part to appropriate the use of such lands to his own benefit. He will not be permitted thus to ignore the truth that every one is entitled to the exclusive enjoyment of his own property. . . . The use and enjoyment of the property under such circumstances [by the wrongdoer] imports necessarily the idea of liability."

In 2 Cyc. 398, the rule is tersely, and, as we think, correctly, stated in the following language: "The owner of cattle who wilfully turns them onto land of another without his consent is liable, without regard to the question of fences." The following authorities also declare the same doctrine: 12 A. & E. Ency. Law (2d Ed.), 1045; *Harrison v. Admanson,* 76 Iowa 337, 41 N. W. 34; *Delaney v. Errickson,* 11 Neb. 533, 10 N. W. 451; *Powers v. Kindt,* 13 Kan. 74; *Logan v. Gedney,* 38 Cal. 579; *Norton v. Young,* 6 Colo. App. 187, 40 Pac. 156.

The contention that the trespasses complained of were not willful and intentional is not tenable, for the evidence shows conclusively that respondent and his employees on several occasions before the trespasses were committed notified appellant to keep his sheep off the premises in question, and that appellant in utter disregard of the notices so given him wilfully and purposely drove his sheep on said premises, and kept, bedded, and pastured them there until they had eaten and destroyed much of the grass and herbage growing thereon. In fact, we think it may be fairly said that because of these willful and intentional intrusions by appellant with his sheep respondent was thereby, in effect, temporarily dispossessed of a large portion of his land. Hence it is idle

for counsel to contend that the trespasses were accidental or in any sense involuntary.

Appellant cites and relies upon the case of *Buford et al. v. Houtz et al.,* 5 Utah 591, 18 Pac. 633; Id., 133 U. S. 320, 10 Sup. Ct. 305, 33 L. Ed. 618, in support of his contention that respondent, under the facts as disclosed by the record, is not entitled to recover, and that the judgment appealed from should be reversed. In that case the plaintiffs brought suit to enjoin the defendants from grazing their sheep on certain sections of arid land, barren, unimproved, and uninclosed, which plaintiffs had purchased from the Central Pacific Railroad Company. The Supreme Court of the United States, in its statement of facts in the case, observes:

"These lands were alternate sections of odd numbers according to the congressional grant to the railroad company, and they with the other tracts mentioned in the plaintiff's bill are said to amount to over 350,000 acres. . . . If we look at the condition of the owner-ship of these lands, on which the plaintiffs rely for relief, we are still more impressed with the injustice of this attempt. A calculation of the area from which it is proposed to exclude the defendants by this injunction, under the allegation that it is forty miles in one direction and thirty-six in another, shows that it embraces 1,440 square miles, or 921,000 acres, all of which, as averred by the bill, is uninclosed and unoccupied, except for grazing purposes. Of this 921,000 acres of land the plaintiffs only assert title to 350,000 acres; that is to say, being the owners of one-third of this entire body of land, which ownership attaches to different sections and quarter sections scattered through the whole body of it, they propose, by excluding the defendants to obtain a monopoly of the whole tract, while two-thirds of it is public land belonging to the United States, in which the right of all parties to use it for grazing purposes, if any such right exists, is equal. The equity of this proceeding is something which we are not able to perceive. It seems to be founded upon the proposition that while they, as the owners of the 350,000 acres thus scattered through the whole area, are to be permitted for that reason to exercise the right of grazing their own cattle upon all the land embraced within these 1,440 square miles, the defendants cannot be permitted to use even the lands belonging to the United States, because in doing this their cattle will trespass upon the uninclosed lands of plaintiffs."

33 Utah—24

It will thus be observed that there is a radical difference between the facts in that case and the facts in the case at bar. The land described in the complaint in this action is in one tract, and the respondent, by excluding the sheep and cattle of other parties therefrom, does not acquire a monopoly of the use of the public lands adjacent thereto for grazing purposes; nor does he thereby deter or in any way hinder other parties from pasturing their flocks and herds upon the public domain surrounding and in the vicinity of the premises in question. Therefore this case presents an entirely different question of law from the one involved in the case of *Buford et al. v. Houtz et al.,* supra, and hence is not governed by the rule announced in that case.

The judgment of the court below is affirmed, with costs.

STRAUP and FRICK, JJ., concur.