George A. BASTIAN and Steven Burton, Plaintiffs and Respondents,

v.

Jack KING, Defendant and Appellant.

No. 17839.

Supreme Court of Utah.

March 23, 1983.

Dwight L. King, Salt Lake City, for defendant and appellant.

E.J. Skeen, Salt Lake City, Stanley R. Smith, American Fork, for plaintiffs and respondents.

STEWART, Justice:

This is an appeal from a trespass action in which the trial court assessed damages against the defendant for injury to plaintiffs' crops and irrigation pipe caused by the trespass of defendant's cattle on plaintiffs' farm land. We affirm as to liability but remand for further findings as to the amount of damages.

In 1979 Bastian leased to Burton 280 acres of farm land in Garfield County, Utah. The land had been uncultivated since 1962. A fence enclosed the land, although it was in a state of disrepair at the time the lease was executed. During the spring and summer of 1979, Burton planted 197 acres of "milo," an experimental crop, which was irrigated by plastic pipe. The cultivated area where the crop was grown was surrounded by desert land and was a natural attraction for livestock. However, neither Bastian nor King made any effort to repair the existing fences. The crop was scheduled for harvest in late November of 1979.

On approximately November 1, 1979, the defendant brought his cattle to feed in a vicinity not far from the Bastian farm. King had previously discussed with Burton the possibility that King's cattle might trespass on the farm and took the position that it was either Bastian's or Burton's responsibility to fence the cattle out. After King turned the cattle out to graze, they drifted onto the farm and fed on the milo through the entire winter, essentially destroying the crop.

This lawsuit ensued. The plaintiffs alleged that the defendant was liable under the Utah livestock fencing statute, U.C.A., 1953, § 4–25–8, for damage to the crop and the plastic pipe. The trial court ruled in favor of plaintiffs and assessed damages in the amount of $2,966 for the crop and $500 for the pipe. On this appeal, defendant contends that the Utah fencing statute is unconstitutional and that the trial court should not have awarded damages because the evidence of damages was too speculative.

The Utah fencing statutes place liability for trespassing livestock on the owners of livestock unless the county enacts a fence law. Section 4–25–8 states:

> The owner of any neat cattle, horse, ass, mule, sheep, goat, or swine that trespasses upon the premises of another person, except in cases where the premises are not inclosed by a lawful fence in a county which has adopted a fence ordinance, is liable in a civil action to the owner or occupant of such premises for any damage inflicted by the trespass.

Garfield County has not enacted a fence ordinance, as authorized by § 4–25–7,[1] thus placing the burden on livestock owners to prevent their livestock from trespassing.

Utah's fencing laws, § 4–25–7 and § 4–25–8, vary only slightly from a line of statutes beginning with Sections 1 and 4 of Chapter 55, Laws of the Territory of Utah, 1890,[2] and continuing through to the

---

1. The phrase in § 4–25–8, "except in cases where the premises are not inclosed by a lawful fence in a county which has a fence ordinance," refers to § 4–25–7. That section authorizes the board of county commissioners in each county to "declare and adopt a general policy within the county for the fencing of farms ... to allow domestic animals to graze without trespassing on farms ...."

2. The sections read:

> Section 1. *Be it enacted by the Governor and Legislative Assembly of the Territory of Utah:* That any county or precinct thereof may at any general or special election called for that purpose by the county court by a vote of not less than two-thirds of the taxpayers voting at such elections declare in favor of fencing their farms and allowing their animals to run at large, in such cases the provisions of this act authorizing the detention and sale of animals for damages shall be inoperative.

> Sec. 4. If any neat cattle, horses, mules, sheep, goats or hogs, shall trespass or do damage upon the premises of any person except in cases where said premises are not enclosed by a lawful fence in districts or places where a fence is required by law, the party aggrieved may recover damages by an action at law against the owner of the trespassing animals or by proceeding as provided in this act.

present.[3] In two previous cases we have upheld the constitutionality of these fencing statutes against different challenges than are made here. In *Peterson v. Peterson,* 42 Utah 270, 130 P. 241 (1913), we held that the laws were not an unconstitutional delegation of power to counties, did not operate nonuniformly in violation of Art. 1, § 24, and were not an unconstitutional special law under Art. VI, § 26 of the Utah Constitution. In *Nowers v. Oakden,* 110 Utah 25, 169 P.2d 108 (1946), we held that U.C.A., 1943, §§ 3–5–77 through 3–5–79, the fencing statutes then in effect, were not unconstitutionally vague.

Defendant's constitutional arguments are stated summarily. His contention seems to be that § 4–25–8 violates the due process provisions of the Federal and Utah constitutions, by imposing liability on him for not fencing, because it is contrary to the rule followed in some other states with regard to fencing and places an unreasonable burden on the owners of livestock by requiring them to fence the land where their cattle graze to prevent them from trespassing on land where crops have been planted. Defendant cites several cases from other states that require livestock to be fenced out and contends that that is the law in most western states. *See Lazarus v. Phelps,* 152 U.S. 81, 14 S.Ct. 477, 38 L.Ed. 363 (1894) (applying Texas statute requiring farmers to fence out cattle); *Maguire v. Yanke,* 99 Idaho 829, 831, 590 P.2d 85, 88 n. 1 and accompanying text (1978) (citing statutes from six other western states). *See also* Scott, "The Range Cattle Industry: Its Effect on Western Land Law," 28 Mont.L. Rev. 155 (1967).

█ Utah has both open range land and large areas of crop land. Even though some other states have reversed the common law rule and require livestock to be fenced out of crop land, it is clearly reasonable for the Legislature to allocate liability as it has by allowing the counties to enact fencing ordinances and, in the absence of such an ordinance, by providing that the owners of trespassing livestock should be liable. Defendant's argument that the plaintiffs should have the duty to fence livestock out should be made to the county under § 4–25–7 or, in lieu of that, to the Legislature. "It is not the function of this Court to evaluate the wisdom or practical necessity of legislative enactments." *Redwood Gym v. Salt Lake County Commission,* Utah, 624 P.2d 1138, 1143 (1981). It is the power and responsibility of the Legislature to enact laws to promote the public health, safety, morals and general welfare of society, *Peck v. Dunn,* Utah, 574 P.2d 367, 368 (1978), and this Court will not substitute our judgment for that of the Legislature with respect to what best serves the public interest. The adjustment and accommodation of conflicting interests, such as are involved in this case, are for the Legislature to resolve, irrespective of the rules applied by other states.

█ The defendant also contends that the evidence of damage was so speculative as to be without a rational basis in the evidence. Although an award of damages based only on speculation cannot be upheld, it is generally recognized that some degree of uncertainty in the evidence of damages will not suffice to relieve a defendant from recompensing a wronged plaintiff. As long as there is some rational basis for a damage award, it is the wrongdoer who must assume the risk of some uncertainty. *Winsness v. M.J. Conoco Distributors,* Utah, 593 P.2d 1303 (1979). Where there is evidence of the fact of damage, a defendant may not escape liability because the amount of damage cannot be proved with precision. *Winsness, supra; Gould v. Mountain States Telephone & Telegraph Co.,* 6 Utah 2d 187, 309 P.2d 802 (1957). *See also* 5 Corbin on Contracts, § 1022.

---

**3.** *See* Revised Statutes, 1898, §§ 18, 20; Compiled Laws, 1907, §§ 18, 20; Compiled Laws, 1917, §§ 56, 58; Revised Statutes, 1933, §§ 3–5–77, –79; U.C.A., 1943, §§ 3–5–77, –79; and former U.C.A., 1953, §§ 4–12–7, –9 (repealed by Laws 1979, ch. 2, § 1). The biggest difference between the current and former statutes is that now the board of county commissioners may adopt a fence ordinance, whereas formerly a general vote of the taxpayers was required. Footnote 2, *supra.*

In this case, however, we have no way of knowing from the findings of fact on what basis the crop damages were computed. The findings do not indicate either the theory on which the damages were computed or the dollar values used to reach the figure of $2,966. The findings simply state that the damages to the crop amounted to that figure. The general but not the only rule for computing crop damage is to ascertain the market value of the harvested crop less the cost of harvesting. *Sharp v. Gianulakis,* 63 Utah 249, 225 P. 337 (1924); *Peterson v. Petterson,* 42 Utah 270, 130 P. 241 (1913). Of course damages might also be computed on some other reasonable basis. In the instant case there was some evidence that the value of the milo as stubble was $3,000. Other evidence indicated its value as grain and stubble was only $575. Still other evidence placed its value as silage at $4,000.

The findings of fact must provide a basis for determining whether there is a rational basis for the award of damages. Proper findings are essential to enable this Court to perform its function of assuring that the findings support the judgment and that the evidence supports the findings. *See Romrell v. Zions Bank,* Utah, 611 P.2d 392 (1980); *Chandler v. West,* Utah, 610 P.2d 1299 (1980); *Rucker v. Dalton,* Utah, 598 P.2d 1336 (1979).

Our concern as to the basis for the damage award is furthered by a minute entry made by the trial judge showing damage of $2,817 to the crops, the cost of harvesting to be $1,408.75, the value of stubble and court costs to be $1,568.00, and damage to the pipe of $500. We are not able to ascertain from these or any other figures how the award of $2,966 was computed. Therefore, we have no alternative but to remand the case for the entry of findings which support the damage award, or if the award is erroneous for a redetermination of damages. *See Silliman v. Powell,* Utah, 642 P.2d 388 (1982).

Defendant also contests the award of damages for the plastic pipe. The testimony is undisputed that the purchase price was $1,000, that the average life was two years, and that the pipe was badly trampled by defendant's cattle. Defendant contends, however, that plaintiffs introduced no evidence to show that they made any effort to salvage the pipe. The findings do not show whether there was any salvage value in the pipe. Defendant's contention, therefore, cannot be addressed without a proper finding.

The judgment of liability is affirmed, but the case is remanded for the entry of appropriate findings with respect to damages. No costs.

HALL, C.J., and OAKS, HOWE and DURHAM, JJ., concur.