J. B. PACE v. C. L. POTTER.

No. 13.

1. **Case Adhered to—Service of Citation on Nonresidents.**—York v. The State, 73 Texas, 651, adhered to, in holding that a motion to quash citation made by a defendant served with citation without the State operates as an appearance to the next term of the court.

2. **Trespass upon Unenclosed Lands.**—The rule of the common law making it a duty of the owner of cattle to confine them to his own land, and holding him liable for trespasses committed by them upon the unenclosed land of another, was never in force in Texas. It is inapplicable to our situation, and the customs and habits of the early settlers of the country, and inconsistent with our legislation with regard to fences and stock.

3. **Same—Case in Judgment.**—Plaintiff and defendant owned lands adjoining. By the fences of other land owners the territory occupied by the plaintiff and defendant became surrounded by fences. The defendant put cattle upon his land. *Held,* that such act and conditions did not make him liable in damages from his cattle pasturing upon the lands of the plaintiff; otherwise, if the defendant had taken and held exclusive possession of the lands of the plaintiff within such an enclosure.

ERROR to Court of Civil Appeals, Second District.

This was an appeal from the District Court of Cooke County. Tried below before Hon. D. E. BARRETT.

The statement of the case and the findings of the Court of Civil Appeals are given in the opinion.

*W. W. Flood* and *Davis & Harris*, for appellant.—1. (1) The court erred in the third conclusion of fact, in holding that the defendant took the exclusive or any other possession of plaintiff's lands, or used them.

(2) The court erred in finding for the plaintiff, for the proof shows that the plaintiff's lands were unfenced, and that he did nothing to prevent stock from grazing thereon, and that at most defendant's stock merely strayed upon plaintiff's unenclosed lands.

(3) The court erred in finding for plaintiff, for under the facts it was the duty of plaintiff to build a partition fence between his lands and the lands of the defendant if he did not desire defendant's stock to graze thereon. Rev. Stats., art. 2431, et seq.; Railway v. Johnson, 65 Texas, 393, 394; Haskins v. Huling, 2 Willson's C. C., sec. 161; Buford v. Houtz, 133 U. S., 320; 3 Wait's Act. and Def., 329; Myers v. Dodd, 68 Am. Dec., 624; Railway v. Munger, 49 Am. Dec., 239; Van Leuven v. Lyke, 49 Am. Dec., 346.

2. The statutes of Texas providing that when a citation or the service thereof is quashed, the defendant shall be held to answer to the next term, was intended to embrace irregular citations, and not citations absolutely void because of attempts to exercise extra territorial jurisdiction; but if said statutes are construed so as to prevent a nonresident from appearing in court and protesting against the exercise of jurisdiction, then said statutes are repugnant to the Constitution of the United States. Feibleman v. Edmonds, 69 Texas, 339; Hockstadler v. Sam, 73 Texas, 315; Pennoyer v. Neff, 95 U. S., 714; Harness v. Hyde, 98 U. S., 476; Alley v. Caspari, 6 Am. St. Rep., 178, note.

3. In December, 1888, at the time the defendant appeared and objected to the notice, because the court was without jurisdiction, it was a wrongful attempt to exercise extra territorial jurisdiction under existing law, as evidenced by a uniform line of decision in Texas, and his appearance for the purpose of objecting to the jurisdiction of the court did not confer jurisdiction; and to change the line of decisions as in this State, after the plea had been filed, and attach to it a consequence not attached to it by existing law, is repugnant to the Constitution of the United States and a judicial enactment of a retroactive law. De Witt v. Monroe, 20 Texas, 293; Feibleman v. Edmonds, 69 Texas, 339; Hockstadler v. Sam, 73 Texas, 315; Douglass v. Pike, 101 U. S., 677; Havemeyer v. Iowa, 3 Wall., 294; Thomson v. Lee, 3 Wall., 327.

*C. B. Stuart*, for appellee.—The only question to be determined is, whether or not the enclosing of plaintiff's land by appellant, and the use of same, entitles plaintiff, under the facts herein, to recover therefor. To develop that inquiry and raise that question, appellee assigns but one counter-proposition, which is as follows:

Where A and B own adjoining tracts of land which are unenclosed, and A encloses both tracts and uses B's land, he is liable to B for its rental value.

It is undisputed in this case that Potter and Pace (appellee and appellant) owned adjoining tracts of land, which were at the time of their acquisition unenclosed. The lands of both afterward became enclosed on the north, west, and south by certain cattle companies that owned the land contiguous to Potter and Pace on north, west, and south. Pace bought from the Kit Carter Company, which owned the land east, and when he bought stipulated that said company should build a line fence east of his land, so as to cut him off from said company. When Pace did this, he perfected the enclosure, which after that contained only his land and Potter's. He afterwards grazed his cattle promiscuously upon Potter's land. 3 Washb. on Real. Prop., 150; Busw. on Lim. and Adv. Poss., sec. 247; Cunningham v. Frandtzen, 26 Texas, 34; Chandler v. Rushing, 38 Texas, 591.

HENRY, Associate Justice. — This suit was instituted by the defendant in error in the District Court of Cooke County, to recover of plaintiff in error damages for the use of nine sections of land for the period of fifteen months, alleged to be of the value of 15 cents per acre per annum.

Plaintiff's petition charged that the defendant was a resident of the State of Virginia, and service of notice of the suit was made upon him in that State.

The defendant first appeared only by a plea objecting to the jurisdiction of the court, and moved to quash the citation and service thereof.

The court sustained the plea, but held that it operated as an appearance to the next term of the court. In this there was no error. York v. The State, 73 Texas, 651.

The conclusions of fact found by the Court of Civil Appeals are substantially as follows:

The Kit Carter Cattle Company owned a large body of land. The plaintiff owned nine sections, lying immediately west of said body of land.

Other persons who pastured the lands lying contiguous to said cattle company's land, in enclosing their lands for pastures, constructed lines of fence on the east, north, west, and south sides of the said lands belonging to plaintiff and the cattle company. "The lines of fence thus constructed connected with each other, and the lands of the plaintiff and of the Kit Carter Cattle Company were thus included in a common enclosure.

"Plaintiff built none of this fence, and had no interest in it; nor did he know that his land was enclosed until shortly before the institution of this suit.

"The Kit Carter Cattle Company built none of this fence, and had no interest in it, except a half-interest in about a mile on the south side of that portion of the same afterwards sold to Pace, as below indicated.

"The Kit Carter Cattle Company used the lands within its enclosure, including the land of the plaintiff, for pasturing stock until about the month of July, 1888. At this date the Kit Carter Cattle Company built a fence north and south, on and along the east line of the 41,000 acres sold to defendant, and thus the lands of plaintiff and defendant were left in a common enclosure.

"The partition fence thus constructed was built at the instance of the defendant, and for him, as a part of the inducement to the sale by the cattle company to him.

"From the date of the sale in July, 1888, until the month of March, 1889, the plaintiff's nine sections of land were in the enclosure of the defendant, and the defendant used this enclosure for the purpose of pasturing his stock.

"In March, 1889, or about that time, the defendant separated his land from that of the plaintiff by building a fence between them."

The District Court rendered a judgment for the plaintiff, which was affirmed by the Court of Civil Appeals.

It is not contended that the rule of the common law making it the duty of the owner of cattle to confine them to his own land, and holding him liable for trespass committed by them upon the unenclosed land of another, was ever in force in this State.

It is inapplicable to our situation and the customs and habits of the early settlers of the country, and inconsistent with our legislation in regard to fences and stock. Rev. Stats., titles 43, 93; Railway v. Johnson, 65 Texas, 389; Buford v. Houtz, 133 U. S., 320; 7 Am. and Eng. Encyc. of Law, 889.

Under the proof, we are of the opinion that plaintiff's land must be treated as having been unfenced in respect to the cattle belonging to the defendant. Before any enclosure was made in that section of the country it was all subject to be grazed upon by the cattle of everybody, while running at large, without creating a cause of action in favor of the owners of the lands against the owners of the cattle. No cattle owner had then the right to confine or herd his stock upon another person's land, or in any manner enclose or take possession of it. But if the owner of any land desired to exclude from it cattle, when running at large, he could do so by enclosing his own land. After that was done in one instance, all outside or unenclosed land continued in its former status. The ap-

propriate remedy of every land owner, including the last one whose land continued in its original condition, was to fence his land, as others had done.

We do not mean to be understood to say, that if the surrounding land owners should by erecting fences on their own lands entirely surround and enclose the land of another, that the cattle of other people could continue to range upon it, or that such fences could be molested by anybody but the owners of them for the purpose of making any use of the land, but we do not think that the owners of such fences, erected upon their own lands, would be required to keep them up so as to prevent their cattle, or the cattle of other people, from grazing upon lands never enclosed by the owner.

None of the fences were constructed by the plaintiff, and none by the defendant, before this controversy arose, except on his east line, or between him and the land of the Kit Carter Cattle Company, which was constructed at his instance. By the acts and agency of other land owners, a large body of the land belonging respectively to the plaintiff, the defendant, and the Kit Carter Cattle Company was fenced in the same enclosure. As to said owners these lands were in the identical situation that existed before any of the contiguous lands had been fenced.

To say the least, each of said owners had the right to put his own cattle upon his own land, inside the general enclosure existing as the result of the fencing in of their own lands by the surrounding owners. If the defendant desired to protect his land from the cattle of the Kit Carter Cattle Company, his remedy was by fencing it off. He did that. If he had desired the same protection against the plaintiff's cattle, his remedy would have been the same. It does not appear, however, that he needed such remedy against the plaintiff.

The plaintiff's condition was in every particular the same. If he desired protection against the cattle of an adjoining land owner, his remedy was to construct a fence for the purpose. He did not do so. On the contrary, the defendant, it seems, constructed a fence for the sole purpose of protecting plaintiff's land. We do not think that he was under obligation to do so, nor that before it was constructed he was liable to plaintiff for the acts complained of.

The defendant would have been liable to the plaintiff if he had taken exclusive possession of the land enclosed. If the Court of Civil Appeals had found as a fact that such exclusive possession was taken, we would be bound by it. That court does find, as a conclusion of law, that such exclusive possession was taken by the defendant, but neither from the conclusions of fact in their original opinion nor in the statement of the evidence in their opinion rendered on the motion for a rehearing, is there anything which in our opinion sustains such conclusions of law.

The judgments of the Court of Civil Appeals and of the District Court will be reversed and a judgment here rendered for the appellant.

*Reversed and rendered*

Delivered May 1, 1893.