## HASKINS v. ANDREWS.

ANIMALS — TRESPASS — ENCLOSURES — INSTRUCTIONS — EVIDENCE—
ACTIONS.

1. Where plaintiff and defendant owned adjoining land in a common enclosure, it will be assumed that defendant, in turning cattle into the field, turned them upon his own land, in the absence of evidence to the contrary.

2. In trespass for the depasturing of plaintiff's land by defendant's cattle, a requested instruction was properly refused as misleading, to the effect that unless the plaintiff attempted to use, and defendant in some manner deprived and excluded plaintiff therefrom, the finding should be for defendant; plaintiff's land adjoining defendant's land in the same general enclosure.

3. The owner of cattle is not required, in this State, to confine them, or to prevent them from straying upon the unenclosed premises of another, or, in default thereof, to respond in damages for their trespass upon unenclosed lands.

4. No trespass is committed where animals lawfully at large wander upon and depasture the unenclosed lands of a private owner.

5. The rule that actionable trespass is not committed when animals lawfully at large wander upon and depasture unenclosed lands is not confined to live stock running at large upon the open range; but applies also where an owner turns his cattle loose upon his own land, allowing them to roam at will.

6. Though cattle wander from the land of the owner, where they were turned loose, to and upon the adjoining unenclosed and unprotected lands of his neighbor in the same general enclosure, he is not guilty of actionable trespass. In such case it is the duty of the land owner to protect his premises by fence or otherwise from the invasion of roving cattle.

7. If one wilfully and knowingly drives his cattle upon the land of another, enclosed or unenclosed, he will be guilty of trespass, and liable for the damages caused thereby.

8. One who takes and holds exclusive possession of the unfenced lands of another, situated in a general enclosure with adjoining lands belonging to himself, and depastures the same with his cattle, will be liable for the value of the use and occupation of the premises in an appropriate action.

9. Plaintiff and defendant owning adjoining lands in the same general enclosure, within which and upon his own land defendant turned cattle at large, evidence might be competent in a proper action to show the number of cattle put and kept in the field by defendant, or the extent to which the pasture was stocked, as tending to prove either the taking of possession of plaintiff's land or the contrary, where defendant's cattle are claimed to have depastured plaintiff's lands.

10. The mere fact that defendant may have turned upon his own land more cattle to pasture than the same could reasonably support cannot be regarded as either conclusive or sufficient proof of trespass, so as to render him liable in an action of trespass for the damages caused by his cattle wandering upon and depasturing plaintiff's unenclosed premises.

11. Merely turning upon defendant's own land a larger number of cattle than it can reasonably support does not necessarily amount to a wilful driving and directing of the cattle upon the neighboring unenclosed land of another, so as to render defendant liable in trespass should any of his cattle wander or stiay upon such neighboring land and depasture the same.

12. Plaintiff and defendant owning adjoining lands in the same field enclosed by fences not constructed or owned by defendant, but plaintiff owning the fence on one side, and the petition alleging possession by plaintiff of his land during the period covered by an alleged trespass. of defendant's cattle which he had turned into the field upon his own land, and it appearing that plaintiff, during said period, had pastured horses on his land, recovery, if any, for the alleged damage to plaintiff's land by the grazing thereon of defendant's cattle, must be for trespass, and not for the use and occupation of plaintiff's land.

13. Instructions stating that defendant would be liable, first, in case he had more cattle in the enclosure than his share of the land could properly support, and, second, if he had overstocked his land, so that to obtain the proper amount of grass the cattle would be forced to go upon plaintiff's adjoining sections, held to be erroneous, as withdrawing from the jury testimony on the part of defendant that a part of the surrounding fence was down, allowing the cattle to pass into an adjoining field and from that to and upon the open range.

14. Such instructions held erroneous for the further reason that defendant's liability was thereby made to depend upon other conditions than a wilful driving or herding of the cattle upon plaintiff's premises, or the taking possession thereof.

15. However slight the evidence as to the opportunity afforded the cattle to pass into an adjoining pasture and upon the open range, it should have been submitted to the jury for their consideration, under appropriate instructions, upon any theory of the case.

16. Under the issues in the case, the suit being in trespass, it was error to instruct that if the defendant had more cattle in the enclosure than his share of the land could possibly support, the law presumes that defendant intended his cattle to graze upon plaintiff's adjoining unenclosed land, and that an implied promise is raised to pay a reasonable amount for the use and occupation of the land.

17. In trespass, plaintiff alleging possession of the land in himself, it is improper to permit a recovery on the theory that the defendant incurred liability to pay for the use and occupation of the premises.

18. The question is expressly not decided whether the fact that defendant had overstocked his own land, or the pasture,

might or might not, in connection with other acts and circumstances, tend to show a wilful trespass on his part upon plaintiff's premises.

[Decided April 25, 1904.]                    (76 Pac., 588.)

ERROR to the District Court, Laramie County, HON. RICHARD H. SCOTT, Judge.

Hiram A. Andrews sued George H. Haskins in an action for trespass alleged to have been committed by defendant's cattle. Judgment was rendered for plaintiff, and defendant prosecuted proceedings in error. The material facts are stated in the opinion.

*N. E. Corthell,* for plaintiff in error.

In the trial of this case the familiar rule was disregarded that evidence must conform to the pleadings, for, while the pleadings are plainly framed upon the theory that the action is one of trespass, the evidence was obviously intended to make out an action of trespass upon the case, and at least one of the instructions given upon the plaintiff's request puts the right to recover upon the ground of implied contract. (Putnam v. Kingsbury, 16 Pick., 37; 6 Cyc., 683, 684, 690, 691, 698.) The statute abolishing the distinction between the forms of action at common law does not alter the rule that evidence must conform to the pleading. (Christenson v. Carney, 36 Ark., 316; Gay v. De Werff, 17 Ill. App., 417.) Trespass is an appropriate action where the injury complained of is the direct and immediate result of force applied by the defendant. Trespass on the case was a growth of the common law designed to cover injuries which were not the direct or immediate result of force, but indirect or consequential injuries following from the defendant's act or neglect. (3 Black. Com., 123; Sharrod v. R. R. Co., 4 Exc., 580; Smith v. Rutherford, 2 S. & R., 258.) Proof of trespass on the case will not authorize recovery in an action of trespass and *vice versa.* (Wood v. R. R. Co., 81 Mich., 358; Barnum v. R. R. Co.,

5 W. Va., 10; Emrich v. Trans. Co. (Ark.), 70 S. W.,
1035; Campbell v. Phelps, 17 Mass., 244; Knight v. Dun-
bar, 83 Me., 359; Mfg. Co. v. Grant, 34 N. J. L., 138;
Willson v. Smith, 10 Wend., 324; Dilts v. Kinney, 15 N.
J. L., 130; De Graw v. Elmore, 50 N. Y., 1; Goss v.
Board, 4 Cal., 468; Eagan v. Delany, 16 Cal., 85; Gold-
stein v. Louther, 81 Ill., 399; Denton v. R. R. Co., 52 Ia.,
161; Carter v. R. R. Co., 65 Ia.,287; Miller v. R. R. Co.,
66 Ia., 364.)

Leave was not asked to amend the petition on the trial
and had such a request been made its allowance would have
been improper. Amendments have been denied in a num-
ber of cases where the amendment would change the cause
of action. For example: Changing assumpsit on foreign
judgment to debt. (India Rubber Co. v. Hoyt, 15 Vt.,
92.) From assumpsit to account rendered. (Stock v. Little,
33 Pa. St., 409.) Trover to assumpsit. (People v. Judge,
13 Mich., 286.) Debt to case. (Houghten v. Stowell, 28
Me., 215.) Contract to tort. (Ramirez v. Murray, 5 Cal.,
222.) Tort to contract. (Supervisors v. Decker, 34 Wis.,
378; Hackett v. Bank, 57 Cal., 375; Rothe v. Rothe, 31
Wis., 570.)

In addition to the natural presumption of law arising
from the nature of the case, the defendant, in support of
this objection, presented the affidavit of counsel showing
surprise at the radically different nature of the case under-
taken to be made in proof from the case pleaded, and a
want of preparation on the part of defendant to meet the
case of indirect injury resulting from the alleged over-
stocking of the field.

Evidence merely tending to show the depastured condi-
tion of the field after the time when defendant's cattle were
there would be insufficient to make out a case. It was
essential to show further the relative condition of the pas-
ture before and after defendant's cattle were put in. Upon
this subject the only evidence tending to support plaintiff's
claim is his own testimony that he judged the field to have

been overstocked by the condition of the cattle and the ap-
pearance of the field; that there was fairly good feed when
the cattle were turned in, but it didn't last long. The bear-
ing and value of this evidence is largely weakened by the
fact that he did not know whether the cattle were turned
in before or after he bought the land. Other witnesses,
however, testify that the feed was short all of the time and
had been eaten off before the defendant had turned in any
cattle. It is submitted, therefore, that the plaintiff did not
make out a case for damage. The fact was also in evidence
that part of the fence was down, so that defendant's cattle
might have passed through into other pastures and upon
the open range. Hence there was no such control of the
cattle as to show that they were forced upon the plaintiff's
land.

No trespass is committed when animals running at large
wander upon or depasture the unenclosed lands of plaintiff.
(Cosgriff v. Miller, 10 Wyo., 190.) The plaintiff appeared
to rest his case upon the authority of Lazarus v. Phelps,
152 U. S., 81, and the instructions were framed and the
evidence directed as far as practicable in view of the lan-
guage of the decision in that case. The real question in
that case and the situation there is better disclosed by refer-
ence to the case between the same parties reported in the
156 U. S., 202, and it appears that the suit was brought to
recover for the use and occupation of the land. The facts
in the case were altogether different from the facts in the
case at bar, and the case furnishes no authority for the in-
structions given in this case upon the evidence.

In this case the plaintiff had a right to build a fence sepa-
rating his land from the land of defendant and to have re-
quired the latter to pay one-half the cost if he made use of
it. Not having enclosed the land where it was practicable
to do so, the defendant was not liable if his cattle went
upon the plaintiff's premises. (Cooley on Torts, 62, 399;
Shepard v. Hees, 12 Johns., 433; Roach v. Lawrence, 56
Wis., 478; Duffees v. Judd, 48 Ia., 256; Oliver v. Hutchi-

son (Ore.), 69 Pac., 139, 1024; Seelover v. Osgood, 52 Ill. App., 260.)

In another case between the same parties it was held ·that the defendant was liable to the plaintiff for damages sustained by him through the cattle of the defendant breaking through a partition fence into another field of the plaintiff because the fence was not a lawful fence under the statute. Hence the astonishing result; in the present case, where the plaintiff had no division fence whatever, he is permitted to recover for damage done by straying cattle; and in the other case, where he had a partition fence not built in such a way as to make it a lawful statutory fence, he was denied recovery, although the cattle broke through the same and depastured his land. The conclusion in the latter case was undoubtedly correct. (Stovall v. Emerson, 20 Mo. App., 322; Polk v. Lane, 12 Tenn., 36; Smith v. Williams, 2 Mont., 195; Seelover v. Osgood, *supra;* Cram v. Ellis, 31 Ia., 510.) Authority for the proposition that the lands must be protected by a sufficient fence to enable the owner to recover for trespass by animals is abundant. (Comerford v. Dupuy, 17 Cal., 308; Morris v. Fraker, 5 Colo., 425; Lyford v. Shriver, 61 Ia., 155; Bradford v. Floyd, 80 Mo., 207; State v. Godfrey, 97 N. Car., 507; Kerwhacker v. R. R. Co., 3 O. St., 172; Murray v. R. R. Co., 10 Rich. Law, 227; Bilien v. Paisley, 18 Ore., 47; Clark v. Adams, 18 Vt., 425.)

The second and third instructions given at the request of the plaintiff were calculated to mislead the jury as to the elements of defendant's liability. They both assume that defendant was responsible for the existence and maintenance of the enclosure and, therefore, constrained the cattle to go upon the plaintiff's land, yet there was no evidence tending to show such control on the part of the defendant. There were vacant public lands within the enclosure to which neither plaintiff nor defendant had better right and for trespass upon which the plaintiff could not recover. Yet the instructions proceed upon the theory that if de-

fendant's cattle trespassed upon any land not his own he would be liable. The second instruction makes defendant liable for the use and occupation of the land. The evidence, however, shows that the plaintiff himself had for a considerable time concurrent use of the land.

*William B. Ross* and *Clyde M. Watts,* for defendant in error.

We admit that the action as brought was for a direct injury by trespass to real property, such an action as at common law would have been technically one of trespass. But the evidence submitted was not of an indirect injury or consequential injury, as contended for by counsel for plaintiff in error. The distinction between trespass and trespass on the case is often so slight as to be of no consequence; trespass lies when the injury is immediate; case when it is consequential. There is no difficulty as to the rule; the difficulty arises in its application. This case was not prosecuted upon this theory. The pleadings are framed upon the action of trespass, and the evidence supports such an action. The evidence shows that plaintiff in error turned in and upon the common enclosure, which belonged to both parties, more cattle than the share of plaintiff in error could properly support, so that they would be obliged to graze upon the lands of the defendant in error, as a result of which such lands were depastured. Therefore, the plaintiff in error turned the cattle in upon the land of defendant in error as much as upon his own land. Hence the injury was immediate and direct. (Cooley on Torts, 514; 2 Greenleaf, 201; Reynolds v. Clark, Strange, 634; Weaver v. Ward, Hobart, 134; Jordan v. Wyatt, 4 Gratt., 461; Henly v. Neal, 2 Humph., 551; Kelly v. Lett, 13 Ired. Law, 50.)

Even if case might be maintained in the case at bar, trespass would also lie. Case cannot be maintained, however, because the evidence supports no other kind of action than trespass. If the injury was attributed to negligence,

though it were immediate, the party injured has an election whether to charge the negligence as a cause of action and to declare in case, or to consider the act itself as an injury and to declare in trespass. This case, however, arises from the wilful act of the defendant, and is not one in which an election exists, but trespass is the only remedy. (Chitty, 127, 146; Brennen v. Carpenter, 1 R. I., 474; Howard v. Taylor, 46 Vt., 683; Bline v. Campbell, 14 Johns., 432.)

We do not believe the giving of the instruction as to an implied promise to pay for the use of the land was error, but if so it was harmless and in no way affected the rights of either party to the suit. (Lazarus v. Phelps, 152 U. S., 362; Ricker v. Freeman, 50 N. H., 429; Woodruff v. Clark, 3 N. J. L., 596.)

Every allegation set forth in plaintiff's petition was proven. The whole evidence to support the theory of the plaintiff in error that there were openings in the enclosure, so as to permit the cattle to go upon the open range, is absurd and was apparently disregarded by the jury. The two witnesses who testified thereto contradicted almost every reputable witness produced by the plaintiff and were related to the defendant. It is not reasonable to suppose that the cattle which defendant took to pasture would have been put into a field from which they could easily escape to and upon the open range. There is no evidence that there were any vacant lands in the enclosure.

As the land of plaintiff and defendant was all contained in one general enclosure by consent of both parties, and a larger number of cattle were put therein than defendant's land would support, there is no question of straying cattle involved in the case. The instructions requested by the defendant were, therefore, properly refused.

POTTER, JUSTICE.

It is conceded by counsel that this is an action for trespass upon lands. The defendant in error, Andrews, brought the suit to recover from the plaintiff in error, Haskins, dam-

ages for an alleged trespass upon two sections of land belonging to the defendant in error, by turning a large number of neat cattle upon the land and thereby depasturing the same. Upon the verdict of a jury, judgment was rendered in favor of defendant in error for $160. It is contended that the verdict is not sustained by sufficient evidence, and that the court erred in giving certain instructions to the jury at the request of the plaintiff below, and in refusing to give certain instructions requested by the defendant. For convenience, the parties will be hereinafter designated according to the title of the case in the trial court—Andrews, as plaintiff, and Haskins, as defendant.

The petition avers that from on or about June 27, 1900, the plaintiff was the owner and in possession of the land in controversy, viz: Sections 31 and 33, in Township 17 North, Range 70 West, in the Counties of Albany and Laramie, in this State; and that "on and at divers times between the 27th day of June, A. D. 1900, and the 1st day of November, 1901, defendant wrongfully entered upon said land, and then and there did turn in and upon said land a large number of live stock to-wit: about sixteen hundred (1,600) head of neat cattle, and did graze the same thereon and thereby wholly depastured the said land, injuring and wholly destroying the grass of the plaintiff then and there growing and being of the value of four hundred dollars." The answer was a general denial.

It appears from the evidence that the defendant owned and was in lawful and peaceable possession of several sections of land adjoining and in the immediate neighborhood of those claimed by plaintiff. The character of defendant's ownership is not disclosed; but he is referred to and treated throughout the case as owner. We are unable to gather distinctly from the testimony the exact quantity of the land owned by defendant, nor is it material. The land of both parties seems to have been surrounded by an exterior fence embracing all of the land of both plaintiff and defendant in a single enclosure, and possibly other lands. There is,

however, a dispute in the evidence as to the quantity of land embraced in the enclosed field; and, indeed, as to whether there was not an opening at one side, so that cattle could wander out of the field upon the open range. There was some evidence to the effect that some of the fence on one side of the pasture was down, so as to allow the cattle access to another pasture of defendant, from which latter pasture access was possible to the open range. The plaintiff admitted in his testimony that the pasture, including his land, contained at least eleven sections. A witness for defendant testified, as we understand it, that it embraced twelve sections. But in the view which we think must be taken of the case, the exact dimensions of the field is immaterial. The location of the fence is not described definitely, nor was there any attempt to do so. It seems, however, that plaintiff's land was situated in the northern part of the pasture. It appears that the plaintiff owned a portion of the fence, that portion, as we understand, which constituted the south boundary of the pasture. The lands were not cultivated, and there were no division fences during the period in question. In exchange for the south fence, defendant constructed for plaintiff a division fence, separating the latter's land from the other lands in the field in the summer of 1901. But when the alleged trespass occurred there was no such fence. The ownership and control of the fence not shown to have belonged to plaintiff is not disclosed.

In the spring or summer of 1900, and also in 1901, the defendant took cattle to pasture and had them turned into the field that contained plaintiff's land, and those cattle doubtless grazed upon the lands of plaintiff. There is evidence showing the number of cattle so turned into the enclosure, and tending to show that, in consequence thereof, plaintiff's lands were depastured. But there is no proof, nor any evidence tending to prove that the cattle were turned or driven upon plaintiff's premises, or held there for any purpose at any time. It is to be taken, in the

absence of evidence to the contrary, that they were turned
upon the land of defendant; and there is some evidence to
that effect.    After the cattle were turned into the field,
until they were taken out, they were permitted to roam
and graze at will.    They were not directed or controlled
in their grazing or movement by the defendant or any
other person, so far as the proof discloses, except that after
commencing to build the division fence, defendant's em-
ployes endeavored to keep the cattle off from plaintiff's
land.    It was attempted on the part of plaintiff to estab-
lish that defendant had overstocked the pasture, and that
it resulted necessarily in the depasturing of plaintiff's prem-
ises; and upon that fact, and that fact alone, the plaintiff
claimed and now claims a right to recover damages.    There
is no hint in the evidence that plaintiff was excluded from
the enclosure or his land therein, or that defendant exer-
cised or assumed to exercise any control over the enclosure
to the exclusion of plaintiff.    On the contrary, it appears
that for a time the plaintiff kept some horses in the pasture.

At the request of the plaintiff, the court instructed the
jury as follows:

"3. · The court instructs the jury that if the defendant
had more cattle in the enclosure than his share of the land
could possibly support, then in that case the law presumes
that the defendant intended that his cattle should graze on
the lands of the plaintiff, and an implied promise to pay a
reasonable amount for the use and occupation of the land
is raised," and further:

"4.    In this case the court charges you that if the de-
fendant stocked his sections within the enclosure with a
greater number of cattle than they could properly support,
so that in order to obtain the proper amount of grass they
would be forced to go upon the adjoining sections, then it
is the duty of the defendant to compensate for the damages
they have done, and you should so find."    These instruc-
tions were excepted to.

At defendant's request, the following instruction was
given:

"The court instructs the jury that the defendant had a right to turn cattle into his fields and pasture them to the full capacity of the lands not owned by the plaintiff, and that he was no more bound than the plaintiff to build a division fence; and the fact that the field included other lands did not in any way restrict the right of defendant to the full use and enjoyment of his own."

The court refused to give the following instructions requested by defendant:

"In this State the law does not hold the owner responsible for the trespass of straying cattle. It requires the land owner to fence against them or bear the loss caused by his failure so to do."

"The defendant was under no obligation to keep his cattle off the lands of the plaintiff in the same field. He had no right to drive his cattle on the plaintiff's land or to preclude the plaintiff from equal use of the field in proportion to the amount owned by him; but unless you find that the plaintiff attempted to use, and the defendant in some manner deprived and excluded the plaintiff from such use of the field, you should find for the defendant."

The closing clause of the last request above quoted is probably misleading, and the request as a whole, while containing some correct statements of the law, hardly seems to present the case clearly to the jury even from the standpoint of the defendant. We are not prepared, therefore, to hold its refusal error, even upon the theory of the case as maintained by counsel for defendant. It seems to declare that the mere fact that defendant had not deprived and excluded the plaintiff from the use of the field, in case the latter had attempted to use it, would require a verdict for defendant. This clearly would not be true if defendant had wilfully and knowingly driven his cattle upon plaintiff's lands against plaintiff's consent. Possibly the request intended to assume the absence of testimony to that effect. It is unnecessary to discuss whether that would be proper or to further discuss that particular request. The refusal

of the remaining request above set out, and the instructions above quoted which were given, indicate the theory upon which a verdict for plaintiff was permitted. The jury were in effect informed, and they must have so understood, that if the evidence showed that the defendant had overstocked his part of the enclosed pasture, the plaintiff was entitled to recover the damages sustained in consequence of the trespass upon and depasturing of his premises. The inquiry is, therefore, presented whether upon the issues and the proof the instructions correctly stated the law of the case.

It is not the law in this State that the owner of cattle is required to confine them or to prevent them from straying or wandering upon the unenclosed premises of another, or in default thereof to respond in damages for their trespasses upon unenclosed lands. That is the common law rule, but it is and always has been inconsistent with the conditions and customs existing here. It is unnecessary to refer to the various statutes that have been enacted in this State in recognition of the custom allowing certain classes of live stock to run at large. Our statutes distinguish between cattle at large and those in charge of a drover. A stock drover is any person driving live stock through any county in this State (R. S., Sec. 2003), and it is made the duty of such drover to prevent his live stock from trespassing upon the property of another. (Sec. 2005.)

The common law rule has been abrogated or held never to have obtained in many of the other states of this country. The rule here, as stated in Cosgriff v. Miller, is that "no trespass is committed when animals lawfully running at large wander upon and depasture the unenclosed lands of a private owner." (10 Wyo., 190.) This rule is not confined to live stock running at large upon the open range. The owner of cattle who turns them upon his own land and suffers them to roam at will and wander from his land upon the unfenced lands of others is no less protected from liability as a trespasser. (Perry v. Cobb (Ind. T.), 76

S. W., 289; Pace v. Potter, 85 Tex., 473; Markin v. Priddy (Kan.), 18 Pac., 514; May v. Poindexter (Va.), 47 L. R. A., 588; Baylor v. B. & O. R. Co., 9 W. Va., 270; Oliver v. Hutchinson (Or.), 79 Pac., 139, 1024.) And the rule is not different in the absence of statute where the owner turns his stock upon his own lands situated within a general enclosure containing also lands of other parties not separated by division fences. (Pace v. Potte., *supra;* Markin v. Priddy, *supra;* Oliver v. Hutchinson, *supra.*) In such case one land owner may lawfully turn his cattle upon his own land, and, though they wander from thence upon the unenclosed and unprotected lands of his neighbor in the same general enclosure, he is not guilty of an actionable trespass. The fact that the surrounding fence may prevent the cattle from roaming as far as they otherwise might does not essentially alter the principle. It is the duty of the land owner to protect his premises by fence or otherwise from the invasion of roving cattle.

But the rule does not permit the live stock owner to escape liability for a wilful and deliberate trespass on his part, and hence if he wilfully and knowingly drive his animals upon the land of another, whether the same be enclosed or unenclosed, he will be liable for the damages so caused. (Cosgriff v. Miller, 10 Wyo., 190, and cases cited.) So where the cattle owner takes and holds exclusive possession of the unfenced lands of another situated in the same general enclosure with his own land, and by depasturing the same with his cattle appropriates to himself the benefits thereof, he will be liable for the value of the use and occupation of the premises. (St. Louis Cattle Co. v. Vaught, 1 Tex. Civ. App., 388; Pace v. Potter, 85 Tex., 473; Lazarus v. Phelps, 152 U. S., 81; Lazarus v. Phelps, 156 U. S., 202; Hastings v. O'Connor (Tex. Civ. App.), 52 S. W., 567.) And evidence showing the extent to which the cattle owner has stocked the pasture, or even his own lands, may doubtless be competent as tending to prove either the taking of possession or the contrary.

There is a statement, *obiter dictum,* in the first Lazarus-Phelps case to the effect apparently that there may be absolute liability in consequence of an act falling far short of a wilful driving or directing of the animals upon the unfenced land of another, or the taking of exclusive possession thereof. It is said in the opinion that one would be liable in case he should overstock his own land, thereby causing his cattle to wander upon adjoining unenclosed land in search of food. But no case has been cited, nor has any come within our observation, where, under the rule prevailing here, that fact alone has been deemed sufficient to constitute one a trespasser and liable in trespass. In the case of Lazarus v. Phelps, the defendant had overstocked the entire tract, including the lands of plaintiff, and the action was for the rental value, based upon an allegation that defendant had the exclusive possession of plaintiff's land, and there were other facts to show use and occupation. In Cattle Co. v. Vaught, *supra,* the cattle company had, by erecting fences, enclosed plaintiff's land, together with its own, in one general enclosure, and used plaintiff's land for the grazing of its cattle the same as its own land; and in Hastings v. O'Connor, *supra,* it was found upon the facts, including the construction of fences by defendant, that he had taken and held exclusive possession of plaintiff's premises. While in Pace v. Potter, *supra,* recovery was denied for the reason that exclusive possession was not shown; and it was held to have been incumbent upon the plaintiff to fence his land against defendant's cattle within the same general enclosure. To the same effect is Oliver v. Hutchinson (Or.), 69 Pac., 139, 1024.

Where the doctrine is maintained, as in this State, that the duty does not rest upon the owner of domestic live stock, not prohibited from running at large, to confine them and prevent them from going upon unenclosed land, but that it is the duty of a land owner to properly protect his premises against the trespass of such animals while at large, we think

that recovery for the trespass of such animals has not been usually, if ever, sanctioned in any form of action, except under such circumstances as show a wilful and deliberate driving, directing or herding of them upon another's un-enclosed lands, or the taking and holding of exclusive pos-session of such lands. The mere fact that the owner may have turned a larger number of cattle upon his own land than the same could reasonably support, if they are allowed to remain there, does not, in our judgment, necessarily amount to a driving and directing of the cattle upon the adjoining or neighboring land of another, in case any of them should of their own free will wander thereon and depasture the same, so as to render the owner thereby guilty of an actionable trespass.

Now, in the case at bar, it is not shown that defendant, Haskins, had anything to do with the erection of the fences surrounding the pasture in question. On the contrary, it is fairly to be inferred from the evidence that they had been constructed before he acquired his interest in the lands thereby enclosed. We understand from the testimony that his interest was acquired the same season that plaintiff obtained title to his lands. Moreover, it does appear that plaintiff owned at least the fence on one side of the pasture, and that not the side adjoining or nearest to his sections. The petition avers that during the entire period covered by the alleged trespass the plaintiff was in possession of his land, and it appears that he pastured thereon, or in the pasture, a number of horses during a part of the same period. Hence the recovery must be for trespass, if any-thing. Further than that, there was testimony on the part of the defendant that a part of the fence on one side of the pasture was down, so as to allow cattle to pass into an adjoining pasture and from that to and upon the open range. That testimony is criticized by counsel for plaintiff, Andrews, as unreasonable and inconsistent with the other facts in the case; but it was in effect totally withdrawn from the consideration of the jury by the instructions; and

it is not perceived why the court should have passed upon its weight and credibility rather than the jury, even on the theory that defendant was liable as for use and occupation. The instructions stated that defendant would be liable, first, in case he had more cattle in the enclosure than his share of the land could properly support, and, second, in case he had overstocked his sections with a greater number of cattle than they could properly support, so that to obtain the proper amount of grass they would be forced to go upon the adjoining sections. Thus, the defendant's liability was not made to follow either a wilful driving or herding of the cattle on plaintiff's premises, nor the taking of possession thereof. Under the instructions, had the jury believed that defendant had placed on his own land but an insignificant number of cattle in excess of that which could be properly sustained by the grasses growing thereon, they were bound, nevertheless, to return a verdict for the entire damage, although many of the cattle may have wandered upon plaintiff's land in obedience to their natural propensity to rove, and not because the grass had all been eaten from defendant's land. In this connection, it is to be remarked that the court refused, upon defendant's request, to charge the jury that the burden rested upon the plaintiff to show by a preponderance of the evidence that defendant put cattle on plaintiff's land, or that he confined the cattle in the enclosure in such large numbers that they could not get sufficient food on any land accessible to them except on that of plaintiff, and that because of this necessity they were forced upon plaintiff's land and so ate off the grass belonging to him, and so prevented his stock from getting it. Possibly this instruction improperly contained the clause "and so prevented his stock from getting it," as the issue is probably not in the first instance whether plaintiff's stock was prevented from getting the benefit of the pasturage on his land, but rather whether defendant obtained the benefit of the pasturage under such circumstances as to render him liable.

In any view of the issues in the case, we think the jury were erroneously instructed by the third and fourth instructions given at request of the plaintiff. We are inclined to consider the third instruction, relating to the raising of an implied promise to pay for the use and occupation of the land, as improper, also, under the issues in the case, since this is a suit for trespass, and recovery is not sought upon any basis of contract. (Lumber Co. v. Wadleigh, 103 Wis., 318.) The instructions furthermore ignored the evidence respecting the opportunity afforded the cattle to pass into an adjoining pasture and upon the open range. However slight that evidence may be, it should have been submitted to the jury for their consideration upon any theory of the case under appropriate instructions.

It may be conceded that had this been a suit for use and occupation the fact that defendant had overstocked the pasture, or even his own lands, would have been competent evidence for the consideration of the jury in determining whether the defendant had the possession of plaintiff's promises, in connection with all other circumstances of the case. There are strong reasons to support the conclusion in Lazarus v. Phelps, *supra,* that where one pastures in an enclosure all or even more cattle than the enclosure can reasonably accommodate with pasturage, and thereby actually consumes the grass upon the lands of another located therein, an implied promise is raised to pay the rental value of such lands. But this is a suit in trespass, and plaintiff alleged that he was in possession of his own lands during the entire period covered by the alleged trespass, and it was not proper therefore to permit a recovery on the theory that defendant had incurred liability to pay for the use and occupation of the premises, nor should the case have been submitted to the jury on any such theory. If liable at all under the issues, the defendant was liable only in the event that his acts had amounted to an actionable trespass.

The chief fault we find with the instructions is that, under the issues in the case, they erroneously made the single

fact that defendant's land had been overstocked, however slight, conclusive proof of the trespass alleged. We are of the opinion that such fact, unconnected with any other circumstance, does not as a matter of law constitute a wilful or actionable trespass, under the rule prevailing in this State. And, moreover, the instructions disregarded the evidence as to the opportunity afforded the cattle to go out of the pasture upon other lands.

But we do not undertake in this case to decide what acts or combination of acts will be sufficient to show a wilful trespass. Hence we do not decide whether the fact that defendant had overstocked his own land, or it may be the entire pasture, might or might not, in connection with other acts and circumstances, tend to show a wilful trespass on his part upon the premises of plaintiff. Possibly cases might be conceived where in conjunction with other acts the act of a cattle owner in turning an unreasonably large number of cattle upon his own land in a general enclosure containing lands of others might tend to show with more or less force not only an intent to depasture the other lands, but a wilful act in that direction. We are not prepared to lay down any rule upon that question. For the purposes of this case it is necessary only to say that we think the mere fact that defendant may have turned upon his own land more cattle to pasture than the same could reasonably support cannot be regarded as either conclusive or sufficient proof of trespass so as to render him liable for the damages caused by his cattle wandering upon and depasturing plaintiff's unenclosed premises, since the law does not require him to confine or restrain his cattle, but permits him to let them run at large.

For the reasons aforesaid, the judgment must be reversed, and the cause will be remanded for new trial.

*Reversed.*

Corn, C. J., and Knight, J., concur.