### WESTERN WYOMING LAND & LIVE STOCK CO. v. BAGLEY et al.

(Circuit Court of Appeals, Eighth Circuit. February 9, 1922.)

No. 5748.

Animals ⬥⟹92—Incidental pasturage of lands intermediate between sections of public land held not trespass.

 Complainant owned about 122,000 acres of land, consisting of most of the odd-numbered sections within a triangle partially inclosed on two sides, each about 30 miles long, by the fenced rights of way of two railroads, and on the third side, 25 miles long, by a range of mountains. The even-numbered sections were for the most part public lands of the United States. The lands were otherwise uninclosed, and the lines between the sections were not marked by posts or stakes. Defendant, who owned an adjoining ranch, turned about 1,500 cattle into the triangle in charge of a range rider, who kept them within the triangle, but otherwise allowed them to range at will. *Held,* that under the law of Wyoming, which permits the free ranging of stock, and under which the owner is not liable for trespass if his stock incidentally grazes on uninclosed lands of another, though he is so liable if he intentionally herds them thereon, defendant was not liable for damage caused by the depasturing of complainant's lands by his cattle having the right to pasture on the government land, and it not appearing that the range rider knowingly herded them on complainant's lands, but that, owing to their tendency to roam, he could not have prevented them from going thereon.

Appeal from the District Court of the United States for the District of Wyoming; John A. Riner, Judge.

Suit in equity by the Western Wyoming Land & Live Stock Company against David Bagley and others. Decree for defendants, and complainant appeals. Affirmed.

Barnard J. Stewart, of Salt Lake City, Utah (Daniel Alexander, A. Calder Mackay, and Ralph T. Stewart, all of Salt Lake City, Utah, on the brief), for appellant.

T. S. Taliaferro, Jr., and W. A. Muir, both of Rock Springs, Wyo., for appellee Bagley.

Before CARLAND, Circuit Judge, and YOUMANS and JOHNSON, District Judges.

JOHNSON, District Judge. The plaintiff brought suit in the court below to enjoin the defendants from grazing cattle on its lands, and to recover damages for the pasturage which defendants' cattle had theretofore eaten up. The defendant Gray was not served with process and did not appear in the cause. On the face of the record, however, in this court, he is improperly made to appear as a party. At the conclusion of the trial the court found generally in favor of the defendant Bagley and dismissed the complaint.

It is the contention of appellant, hereafter referred to as plaintiff, that the finding of the court in favor of the appellee Bagley, hereafter referred to as defendant, is not sustained by the evidence.

Plaintiff is engaged in the sheep business. It owns about 122,000 acres of grazing land in Uinta and Sweetwater counties, Wyo., which it uses as a winter range for its sheep. Plaintiff owns other lands in the neighborhood of the 122,000 acres, upon which its sheep are pastured during the spring, summer, and fall seasons. During these seasons the grasses and other vegetation upon the winter range, when not grazed or interfered with, are cured on the ground, and make excellent feed for sheep during the winter season. Plaintiff's winter range lies within what is spoken of in the case as the triangle. The Union Pacific Railroad, for a distance of about 30 miles westerly from its junction with the Oregon Short Line Railroad at Granger, Wyo., forms the southerly line of the triangle; the Oregon Short Line Railroad, for about the same distance northwesterly, forms the northerly line of the triangle; a range of mountains called the Hog's Back forms the westerly side of the triangle. This side of the triangle is about 25 miles in length. The Oregon Short Line Railroad maintains fences along its right of way which prevent live stock from passing out of the triangle on its northerly side. Fences are also maintained by the Union Pacific Railroad Company along its right of way, but at various points there are openings in the fences, which give access to or egress from the triangle on its southerly side. The mountain range called the Hog's Back forms a partial barrier on the west. Plaintiff's lands are a part of the land grant of the government in aid of the construction of the Union Pacific Railroad, and embrace practically all of the odd-numbered sections within the triangle lying within the 20-mile limit of the railroad. The

even-numbered sections interlocking with plaintiff's lands, and the sections outside of the 20-mile limit in the triangle, are, in the main, public lands of the United States, although the record shows that some of these lands have passed into private ownership. The lands of the plaintiff and all of the public lands of the government within the triangle are open, unimproved, unfenced grazing lands.

The defendant owns land and has a ranch at the apex of the triangle. In April, 1918, the defendant bought 1,090 head of steers, which had been shipped into Utah from California. At that time he had about 400 head of cattle on his ranch. Shortly after making the purchase of the 1,090 head of steers, defendant shipped them to Wyoming and turned them and his ranch cattle into the triangle, and employed a man to ride the range and look after the cattle for him.

Plaintiff contends that the evidence shows that this man, the employee and agent of defendant, herded the cattle during the balance of the year 1918 upon its lands in the triangle, and that they ate up a large part of the grasses growing upon said lands during that year. It alleges in its complaint that it has been greatly damaged by reason of the depasturing of its said lands by defendant's cattle, and that, unless restrained by the court, the defendant will continue to herd cattle on plaintiff's lands, and cause them to eat up the feed growing and to grow thereon, to its great and irreparable injury.

The defendant claims that the evidence does not show that the cattle were herded upon plaintiff's lands, but does show that the cattle were simply turned loose by defendant upon the public lands of the government, which he claims it was lawful for him to do, and that the grazing on plaintiff's lands by defendant's cattle was the result of the cattle following their own instincts in search of feed, and not because of any act of the defendant.

The evidence shows that it was the tendency of the cattle to move westerly on the range. The man in charge kept in touch with the cattle grazing in the neighborhood of the Union Pacific Railroad, and drove back into the triangle those which had left it through the openings across the railroad right of way. He also rode the range in the neighborhood of the mountains which form the western boundary of the triangle, and drove the cattle back toward the apex which were about to leave the triangle through the passes of the mountains. The straying cattle, after being driven back, were turned loose again by the range rider in the triangle.

The lands within the triangle are not marked by posts or stakes, as was the case in Mumford v. Rock Springs Grazing Ass'n (C. C. A.) 251 Fed. 842, so as to enable the range rider, by inspection of the markings on the posts, to distinguish between the public domain and the lands of plaintiff. The defendant made no effort to locate section corners or lines, and the cattle driven back by the range rider into the triangle were turned loose by him, without respect to the ownership of the land.

It is the disposition of cattle to roam, and when turned loose upon the range a herd of cattle will in a short time be scattered for miles over the surrounding country. It is within the power of a shecpherder

to hold a band of sheep upon any particular section of land and depasture it. But this is not practicable with cattle. The most that can be done with a herd of cattle is to hold them within a relatively large area by range riders, driving those back which leave or attempt to leave the range. It was inevitable that defendant's cattle would graze upon plaintiff's land when turned loose in the triangle, and it was a matter of small moment whether, when turned loose by the range rider, they happened to be upon the public domain or plaintiff's land. Whether one or the other, the cattle would soon scatter, and some of them be upon the adjacent lands.

It is undoubtedly true that the pasture on plaintiff's lands consumed by defendant's cattle was of very considerable value, and it is the contention of counsel that the plaintiff is not only entitled to recover from the defendant the value of the pasturage eaten up by his cattle, but that the defendant should be enjoined from depasturing plaintiff's lands by herding his cattle in the triangle in the manner pursued by him during the year 1918.

It is not unlawful for cattle to run at large in the state of Wyoming. The Supreme Court of the state, in Haskins v. Andrews, 12 Wyo. 471, 76 Pac. 590, say:

"It is not the law in this state that the owner of cattle is required to confine them, or to prevent them from straying or wandering upon the uninclosed premises of another, or, in default thereof, to respond in damages for their trespasses upon uninclosed lands. That is the common-law rule, but it is and always has been inconsistent with the conditions and customs existing here. * * * The common-law rule has been abrogated, or held never to have obtained, in many of the other states of this country. The rule here, as stated in Cosfriff v. Miller, is that 'no trespass is committed when animals lawfully running at large wander upon and depasture the uninclosed lands of a private owner.' 10 Wyo. 190, 68 Pac. 206. This rule is not confined to live stock running at large upon the open range. The owner of cattle who turns them upon his own land, and suffers them to roam at will and wander from his land upon the unfenced lands of others, is no less protected from liability as a trespasser. Perry v. Cobb (Ind. T.) 76 S. W. 289; Pace v. Potter, 85 Tex. 473, 22 S. W. 300; Markin v. Priddy (Kan. Sup.) 18 Pac. 514; Poindexter v. May (Va.) 34 S. E. 971, 47 L. R. A. 588; Baylor v. B. & O. R. Co., 9 W. Va. 270; Oliver v Hutchinson (Or.) 69 Pac. 139, 1024."

Applying the foregoing rules to the case in hand, it is clear that the defendant has the right to open gates leading from his ranch into the triangle and to suffer his cattle to wander from the ranch upon the lands of the plaintiff. We do not understand that counsel for plaintiff contend otherwise. They invoke the rule announced in the next paragraph of the opinion just quoted from, in which it is said:

"But the rule does not permit the live stock owner to escape liability for a willful and deliberate trespass on his part, and hence, if he willfully and knowingly drive his animals upon the land of another, whether the same be inclosed or uninclosed, he will be liable for the damages so caused. Cosfriff v. Miller, 10 Wyo. 190, 68 Pac. 206, and cases cited."

Counsel claim the evidence shows that the defendant knowingly, willfully, and repeatedly drove his cattle upon plaintiff's lands in the triangle and depastured them, and that he is therefore guilty of and liable for these willful, deliberate, and continued trespasses.

It is well settled that the owner of sheep, who willfully herds them upon the uninclosed land of another and depastures it, is liable in damages, and in a proper case may be enjoined. Cosfriff v. Miller, 10 Wyo. 100, 68 Pac. 206, 98 Am. St. Rep. 977; Delaney v. Erickson, 11 Neb. 533, 10 N. W. 451; Monroe v. Cannon, 24 Mont. 316, 61 Pac. 863, 81 Am. St. Rep. 439; Healey v. Smith, 14 Wyo. 263, 83 Pac. 583, 116 Am. St. Rep. 1004; Mower v. Olson, 49 Utah, 373, 164 Pac. 482; Jones v Blythe, 33 Utah, 362, 93 Pac. 994; Thomas v. Blythe, 44 Utah, 1, 137 Pac. 396; Musselshell Cattle Co. v. Woolfolk, 34 Mont. 126, 85 Pac. 874. In addition to the above cases, counsel have also cited the following: Lazarous v. Phelps, 152 U. S. 81, 14 Sup. Ct. 477, 38 L. Ed. 353; State v. Johnson, 7 Wyo. 512, 54 Pac. 502; Harrison v. Adamson, 76 Iowa, 337, 41 N. W. 34; Haskins v. Andrews, 12 Wyo. 458, 76 Pac. 588. Of these, State v. Johnson was a criminal prosecution. Haskins v. Andrews involved the rights of parties whose lands were in a common inclosure, and on the facts it is not in point here. The value of the case lies in the general rules announced by the court quoted above. Lazarous v. Phelps also involved the rights of parties owning land within a common inclosure, and the decision turned upon the overstocking of the pasture, a question not involved in the instant case. The case of Harrison v. Adamson involved the sufficiency of the complaint on demurrer. In that case the court said:

"The allegations of the petition are to the effect that defendant, knowingly and willfully, caused his cattle to be driven and kept upon plaintiff's land. * * * The laws of the state provide that trespass is not committed when cattle which are running at large enter upon uninclosed land. But it is quite a different thing when cattle not running at large, but in the charge and under the control of a herdsman, the employee and agent of their owner, are driven and kept upon uninclosed land against the will of the landowner, and with full knowledge of the owner of the cattle."

The doctrine announced in the case of Harrison v. Adamson, that the owner of live stock in charge of and under the control of a herdsman, which are driven and kept upon uninclosed land against the will of the landowner, is a trespasser and liable in damages, is the general doctrine of all the cases.

The sole question for our determination is whether the facts established by the evidence as hereinbefore set out bring the case within the rule established by the cases. Stated another way, the question is: Having turned his cattle out of his ranch upon the public domain in the triangle, which we have no doubt he had the right to do, did the defendant become a trespasser by driving the cattle back which had left, or were about to leave, the triangle?

It was not unlawful to drive the cattle across plaintiff's lands for the purpose of reaching the public lands. Mackay v. Uinta Development Co., 219 Fed. 116, 135 C. C. A. 18. But, having driven the cattle upon a section of the public domain, was it lawful for the range rider to leave them there, free to separate and again scatter over and graze upon plaintiff's land, or was it the duty of the defendant to keep the cattle thus driven back by the range rider upon the public domain?

The evidence shows that it is not practicable to hold cattle upon so small an area as a section of land. This being true, the defendant was

under the necessity of either driving his cattle back and turning them loose upon the public domain, as he did do, or else suffer those straying from the triangle to continue to stray, unless indeed he drove them back to the ranch and permitted them to again stray from it. Plaintiff in its brief says:

"We are not asking in this case that the defendant be enjoined from permitting his domestic cattle to run at large and to follow their own instincts in the grazing of the public range. We are not asking that the defendant be deprived of the use of the public range. We are not even objecting to the cattle being driven across our land to get to the public domain. We are simply asking that he be enjoined from controlling, directing, handling, or herding his cattle upon the lands of the plaintiff, and thereby depasturing and destroying the plaintiff's winter range. * * * It must be apparent to the court that, if men engaged in the cattle business, whether they be local ranchers or nonresident speculators engaged in buying and selling of cattle, are permitted to ship thousands of head of cattle upon the winter ranges of sheep men, ranges in private ownership, purchased at great expense and necessary in the carrying on of the sheep business, and graze those ranges promiscuously, in season and out of season, controlling and keeping these cattle in certain sections by their agents and employees, under the pretense and claim that these cattle are following their own instincts and are running at large on the public domain, it necessarily follows that it is only a matter of a short time before the business of the sheep grower in the sections in question will be destroyed, and this vast territory of private lands, purchased and maintained at great expense, will in effect be confiscated. It is hardly believable that such a policy can be tolerated, or such disaster promoted."

If the contention of the plaintiff is the correct view, and the defendant's ranch was not in the triangle, his right to use the public domain within the triangle would depend upon the chance of his cattle straying into the triangle and remaining there—a situation which would give the plaintiff, as against the defendant, a decided advantage in the use, if not the practical monopoly, of the public domain lying within the triangle.

Upon a state of facts in many ways parallel and similar to the facts in this case, the Supreme Court of Wyoming, in a well-considered case, Martin v. Platte Valley Sheep Co., 12 Wyo. 456, 76 Pac. 576, said:

"We are unable to avoid the conclusion that the decree goes too far in this case, and, in effect, awards to the plaintiff below the use of the government land in its inclosure, to the exclusion of its neighbors, the defendants, and reverses the principle recognized by our laws, customs, and decisions."

Although the court affirmed the judgment, after modifying it, "so as to perpetually enjoin the defendants, their servants, agents, and employees, from willfully and knowingly holding or actively herding their cattle or driving them upon or across any of the premises of plaintiff described in the petition," it is apparent that this modification rendered the affirmance of the judgment a barren victory for the plaintiff.

In Buford v. Houtz, 133 U. S. 320, 10 Sup. Ct. 305, 33 L. Ed. 618, a case similar in principle to the one at bar, it was alleged in the complaint that:

" * * * Each of said defendants claims that all the even-numbered sections in each of said townships and fractional townships being unoccupied public domain of the United States, he has an implied license from the government of the United States to drive, graze, and pasture his sheep thereon, and that he cannot do this without having them run, graze, and pasture upon

the lands of the plaintiffs. Therefore each of said defendants claims and asserts that he is entitled to have his said sheep run, graze, and pasture upon the lands of the plaintiffs as aforesaid, and that during the year past each of said defendants did repeatedly drive large bands and herds of sheep over, upon, and across the lands of these plaintiffs, and graze and pasture the same thereon, to the great injury and damage of the said plaintiffs, and that they and each of them threaten to continue to do this, and will do it unless restrained by order of the court. * * * "

It was prayed that it be adjudged:

"That said defendants have not, nor has either of them, any right of way for any of his or their sheep over said lands of plaintiffs, or any part thereof, except over and along the highways aforesaid; that they have not, nor has either of them, any right to graze or pasture any of his or their sheep thereon or on any part thereof;"

and for general relief. The defendants demurred to the complaint. The demurrer was sustained by the court below. In its discussion of the case the Supreme Court said:

"It seems to be founded upon the proposition that while they, as the owners of the 350,000 acres thus scattered through the whole area, are to be permitted for that reason to exercise the right of grazing their own cattle upon all of the land embraced within these 1,440 square miles, the defendants cannot be permitted to use even the lands belonging to the United States, because in doing this their cattle will trespass upon the uninclosed lands of plaintiffs. In other words, they seek to introduce into the vast regions of the public domain, which have been open to the use of the herds of stock-raisers for nearly a century without objection, the principle of law derived from England and applicable to highly cultivated regions of country, that every man must restrain his stock within his own grounds, and if he does not do so, and they get upon the uninclosed grounds of his neighbor, it is a trespass for which their owner is responsible. We are of opinion that there is an implied license, 'growing out of the custom of nearly a hundred years, that the public lands of the United States, especially those in which the native grasses are adapted to the growth and fattening of domestic animals, shall be free to the people who seek to use them where they are left open and uninclosed, and no act of government forbids this use. * * *

And the court closes its discussion of the case with these words:

"Upon the whole, we see no equity in the relief sought by the appellants in this case, which undertakes to deprive the defendants of this recognized right to permit their cattle to run at large over the lands of the United States and feed upon the grasses found in them, while, under pretense of owning a small proportion of the land which is the subject of controversy, they themselves obtain the monopoly of this valuable privilege."

We think the same sort of monopoly would inure to the plaintiff in this case, by granting the injunction prayed for by it, that the plaintiffs in the Buford Case sought to secure.

We have discussed this case upon the assumption that the cattle of the defendant were driven back by the range rider and turned loose upon the public domain. We have made this assumption for two reasons:

First, because the evidence shows that, as already stated, it was inevitable that defendant's cattle would graze upon plaintiff's lands when turned loose in the triangle, and it was a matter of small moment whether, when turned loose by the range rider, they happened to be upon the public domain or plaintiff's land. Whether one or the other, the

cattle would soon scatter, and some of them be upon the adjacent lands. If it be conceded that it was a trespass to turn the cattle loose upon plaintiff's land, still since it appears that no more of the feed on the lands of the plaintiff was eaten up in the long run than would have been the case had the cattle in each instance been turned loose upon an adjacent government section, it follows that plaintiff's damages resulting from the wrongful acts of the defendant in thus turning his cattle loose upon plaintiff's land were nominal—a result that does not require or justify a reversal of the judgment.

Second, because the case was not tried in the court below, or presented in this court, upon the theory that the defendant had the right to drive his cattle back into the triangle and turn them loose upon the even-numbered sections of land belonging to the government. The case was tried in the court below, and presented in this court, on the theory that the rule applied by the courts to the grazing of sheep is applicable to the grazing of cattle, although, as we have seen, it is impracticable to control cattle as sheep are controlled.

Upon a consideration of the whole case as presented by the record, we are of the opinion that the rule of the Buford Case is the rule applicable in this case. and that the court below committed no error in dismissing the action.

Judgment affirmed.