## John C. Cochrane

*v.*

## Jane L. Tuttle.

1. Excessive damages — *evicting tenant.* Even where the relation of landlord and tenant exists as to a part of the defendant's dwelling house, and the tenant is evicted by the landlord closing his doors against her, there being no force used, and the tenant suffers no personal injury, and recovers all the property left in the house by her, and there is no proof of actual damages, a verdict in favor of the tenant, in a suit against the landlord, for $1,250, will be regarded so excessive in amount as to call for a reversal of the judgment.

2. Landlord and tenant — *whether facts of the case show such relation.* Where a party testified that she went into a portion of the defendant's dwelling house, certain rooms being reserved, and that she was to board the defendant, his wife and two children, and had the privilege of taking in other boarders, and that this arrangement was for one year, but did not deny defendant's statement that the house was "to be his house," the court say they doubted if the relation of landlord and tenant existed, and were inclined to hold that the contract did not create, in such party, any estate, either at will, or for any definite period, in the defendant's house, or any part of it.

3. Evidence — *advice of counsel in mitigation of damages.* In case by a plaintiff for being wrongfully shut out of a house, a portion of which she claimed to have rented of the defendant, there being no force or violence used, the defendant offered to prove that he acted upon competent legal advice in what he did, which the court refused to admit: *Held,* that the proof was admissible, not in bar of the action, or in mitigation of actual damages, but in mitigation of any exemplary damages, and that the court erred in refusing to admit it.

Appeal from the Circuit Court of Cook county; the Hon. John G. Rogers, Judge, presiding.

This was an action on the case, brought by Jane L. Tuttle against John C. Cochrane. The opinion of the court states the facts of the case.

Mr. J. B. Leake, for the appellant.

46—75th Ill.

Messrs. ELDRIDGE & TOURTELLOTTE, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

On what terms plaintiff occupied defendant's dwelling house, whether as a tenant by the year or at will, or under a contract which created no relation of landlord and tenant, is left somewhat in doubt by the testimony in the case. The contract was verbal. Plaintiff says she was to have the house for one year, and was to board four persons, viz.: Mr. Cochrane, his wife and two children. Whether she was to have the whole or any distinct part of the house, she does not state. On the contrary, the defendant says, the bargain was this: That she should come to his house at Riverside; have the privilege of the front chamber, the middle room, the east room, and the servant's bedroom; the family chamber and the lower part of the house to remain as it then was; no parlor should be closed, but the house should be open, so that to all appearances he would be keeping house just the same as before. He was to have what was called his own room, and she was to have the other chambers; she was to board his family, and do their washing; or, in case they kept a girl to do their washing, she was to board the girl. He says it was the distinct understanding, his "house was to be *his* house," "all things should be pleasant," and that the arrangement concluded between them should continue only so long as both parties should remain satisfied with it, and that either party could terminate it at his or her election. Both parties understood plaintiff was to keep other boarders during the time she should occupy the house. She was to take charge on the first of May, but she was in fact there some weeks prior. Accordingly, she entered upon the performance of the agreement, whatever it was. She procured boarders as soon as she could, and by the middle of June, she says, the house was full, and she was beginning to realize a profit on the enterprise. Towards the latter part of June, she undertook a business visit to New York, leaving in her stead, as housekeeper, Mrs. Bush.

About three days after her departure, defendant addressed her a letter, in care of her daughter in Chicago, notifying her that he had concluded not to rent his house any longer; that he had taken possession, and that what things she had there she was at liberty to take out. On her return from New York, she found this letter, and immediately repaired to Riverside. Defendant told her, as in the letter, he had changed his mind, and had concluded to break off the arrangement; that he had no room in the house that night, and if she would stay at the hotel he would pay her bill. She declined to do it, but remained in the house over night. On the next morning, she passed into the vestibule, when defendant closed the door behind her, and it having a spring lock, it fastened. She passed out of the vestibule, upon the verandah, when defendant locked the outer doors. Having left some of her wearing apparel in the room she had occupied, it was offered to her, but she declined to receive it. She went to the depot to take the train for Chicago, and defendant's wife sent her hat and some other things to her there, where she received them. However, it is insisted she left in her dress pocket a pocket-book containing $255.75, which she says she never got, but the evidence is satisfactory there was no money in the dress after her departure. Search was immediately made, and the pocket-book was found in her dress, but it contained no money, nor could any be found in the room. After taking counsel, this suit was brought, and on the trial the jury returned a verdict in favor of plaintiff for $1,250, on which the court entered judgment, to reverse which the defendant brings the case to this court on appeal.

We do not see how this judgment can be permitted to stand. The amount found by the jury is out of all proportion to any injury inflicted, even upon the theory of plaintiff, the relation of landlord and tenant existed, and that she was evicted by the defendant. No force was used. She suffered no personal injury, and it is proven she recovered every article of personal property she left in the house. There being no evidence of

any actual damages, it follows the amount found consists wholly of punitive or exemplary damages. The testimony in the case shows no such willful disregard of the rights of plaintiff as would authorize the imposition of any considerable exemplary damages.

According to the testimony of defendant, the arrangement under which plaintiff was to take his house could be terminated at any time by either party. Plaintiff insists, however, she was to have the house for one year, but she is not corroborated by any thing in the record; while her repeated declarations to disinterested parties are to the effect the contract was for no definite period. When inquired of by Park, who was a friend of plaintiff, whether she would continue to keep the house during the winter, she spoke doubtfully about it — that she did not know whether defendant would let her have the house that long, or something to that effect. Her theory of the case rests entirely upon her unsupported testimony, while defendant's position, the arrangement could be annulled when either party became dissatisfied, is sustained, not only by his testimony, but by her repeated declarations to that effect, made before any controversy arose between them. When recalled as a witness, she does not deny the statements made by Mr. Park and other witnesses. It cannot, with any justice, be said that plaintiff has proved any case by a preponderance of the evidence that would entitle her to a recovery. If the contract was that either party, at his or her election, could annul it at any time, then it was rescinded by the letter of the 27th of June, addressed to plaintiff at Chicago, and received by her after her return from New York, and she had no right to intrude herself upon defendant in his house.

If it be said the evidence is conflicting, and presented a fair case for a jury, still the testimony would not warrant any such verdict as that found, and the court should have awarded a new trial.

It is very doubtful whether the relation of landlord and ten-

ant existed.  The arrangement has more the elements of a simple contract than of a tenancy. What estate did she have, according to her own testimony? She does not deny defendant's statement, that the distinct understanding was, "His house was to be his house." Both agree defendant was to have the exclusive use of a part of the house, and it seems to us the true meaning of the agreement is, she was to have the privilege of certain rooms for keeping boarders, besides defendant's family, and by no fair construction could the contract create any estate in her, either at will, or for any definite period. For any breach, she could have an adequate remedy by an action on the contract, and ought to have pursued it, instead of forcing herself a second time upon the defendant and his family.

But upon the hypothesis the relation of landlord and tenant existed, and that the acts of defendant amounted to an eviction, we think the court erred in excluding testimony offered, that defendant first obtained legal counsel as to the proper course to be pursued, not in justification, or mitigation of any actual damages, but in mitigation of any vindictive damages sought to be recovered. This is an action of trespass on the case, and one averment is, that defendant, " contriving and maliciously intending to injure plaintiff, denied and prevented the plaintiff from entering said house." The court instructed the jury that if the acts of defendant were " wantonly and willfully " done, in assessing damages they could give exemplary damages.

The case of *Roth* v. *Smith*, 41 Ill. 314, was an action of trespass *vi et armis*, for false imprisonment. The defendant proved he was advised by persons not lawyers to make the affidavit under which plaintiff was arrested. In reference to the admission of this testimony, the court said : " For the purpose of showing that he was not actuated by vindictive feelings, this evidence was proper, and if proper for any purpose, it should always be admitted." Such evidence cannot be received in this class of cases, as in cases for malicious prosecution, in bar of the action, or in mitigation of actual damages ; but it is

admissible in mitigation of vindictive damages sought to be recovered, and may be limited by instruction from the court to that purpose alone. This principle is settled by numerous cases in this court. *Gray* v. *Waterman*, 40 Ill. 522 ; *Johnson* v. *Jones*, 44 ib. 142 ; *Roth* v. *Smith*, 54 ib. 431.

For the reasons indicated, the judgment will be reversed and the cause remanded.

*Judgment reversed.*