[No. 5135.]
[No. 2725 C. A.]

RICHARDS ET AL. v. SANDERSON.

1. **Public Lands—Animals—Stock-grazing Privileges—Statutory Construction.**

There is an implied license that the public lands of the United States shall be free to the people who seek to use them for the purpose of grazing stock, so long as the government does not forbid such use; and, to protect this use, the act of Congress of 1885 (U. S. Comp. Stats. 1901, p. 1524) was passed, and our own state laws bearing upon the subject indicate the same policy; but such privilege cannot be monopolized by any one, directly or indirectly, or under claim that one is but protecting his own land.—P. 274.

2. **Same—Unfenced Private Lands—Right to Drive Off Trespassing Cattle.**

Parties have the right to drive trespassing cattle from their own unfenced lands, exercising that degree of care to prevent injury that would ordinarily be observed by a prudent person, but when the cattle cross the line onto government land, the right to drive further ceases, since the cattle of the public generally have a right to graze thereon.—P. 275.

3. **Public Lands — Animals — Stock-grazing Privileges — Uninclosed Lands—Common Law.**

The principle of law derived from England, that the owner must prevent his stock from going on the uninclosed lands of his neighbor, is not applicable to the vast regions of the public domain which have been open to stock-raisers for more than a century.—P. 275.

4. **Practice in Civil Actions—Damages—Public Lands—Animals —Usual Range—Driving Cattle — Instructions — Statutory Construction.**

Sections 1424, 1425, Mills' Ann. Stats., provide that if any person shall maliciously drive cattle from their usual range, he shall be deemed guilty of a misdemeanor and shall be liable to the party injured by such action in three times the amount of the actual injury occasioned. In an action to recover for the wrongful driving of plaintiff's cattle from their usual range, it being undisputed that the vicinity from where the cattle were driven was their usual range, it was not necessary to instruct as to the quantum of proof required to establish the fact that defendants had willfully driven the cattle from their usual range; nor was it necessary to give an instruction defining the word "range," when the undisputed testimony showed that the government lands from which they were driven was their usual range. —P. 276.

5. **Same—Words and Phrases.**

Under Mills' Ann. Stats., §§ 1424, 1425, providing that if any person shall maliciously drive cattle from their usual range, he shall be deemed guilty of a misdemeanor and shall be liable to the party injured by such action in three times the amount of the actual injury occasioned by the commission of the offense, it is not necessary, in order to establish a cause of action thereunder, to show that they were driven beyond the limits of the territory within which they may naturally range, since willful driving to any material extent from public domain within such territory to another locality, within or without such territory, is driving from their usual range.—P. 277.

6. **Appellate Practice—Practice in Civil Actions—Damages—Instructions Refused—Harmless Error.**

Where, in an action to recover for the wrongful driving of plaintiff's cattle from their usual range, which was composed of alternate leased and public sections, there being no claim on plaintiff's part that he had the right to pasture defendant's leased land, the refusal of an instruction that lands which are the subject of private ownership do not constitute a cattle range within the meaning of the law against the express will of the owner, was not prejudicial to defendants.—P. 277.

7. **Animals—Public Lands—Cattle Wandering Thereon—Uninclosed Land—Liability.**

One who turns his cattle out to graze, unrestrained, upon lands where he has a right to turn them, although knowing that they will probably wander upon the uninclosed premises of

another, is under no obligation to prevent them entering upon such premises; and, if they do so enter through following their natural instincts, he is not responsible for the damages occasioned thereby.—P. 278.

8. **Practice in Civil Actions—Animals—Damages—Public Lands — Usual Range — Driving Cattle — Defenses — Advice of Counsel.**

In an action to recover actual damages for the wrongful driving of plaintiff's cattle from their usual range, it was not error to refuse an instruction that the jury might consider whether or not the defendants, before driving the cattle, in good faith took legal advice and were governed thereby in what they did; since advice of counsel does not bar an action, nor is it any defense to one for actual damages caused by a wrongful act, but is limited to mitigation of vindictive damages sought to be recovered.—P. 280.

9. **Public Lands—Animals—Usual Range—Words and Phrases.**

Under Mills' Ann. Stats., §§ 1424, 1425, providing that if any person shall maliciously drive cattle from their usual range, he shall be deemed guilty of a misdemeanor and shall be liable to the party injured by such action in three times the amount of the actual injury occasioned by the commission of the offense, the word "maliciously" means a wrongful act done intentionally, without just cause or excuse.—P. 280.

10. **Appellate Practice—Evidence—Proof of Admitted Fact— Harmless Error.**

A party cannot successfully complain, on appeal, of the alleged erroneous admission or rejection of testimony which tends to prove an act that he himself admits he committed.— P. 281.

11. **Practice in Civil Actions—Verdict—Damages—Computation.**

In an action to recover under a statute allowing the successful party a sum which is determined by multiplying the actual damages sustained a specified number of times, it is immaterial whether the jury return in their verdict the sum which the plaintiff is entitled to recover by virtue of the statute, or whether they return the actual damages and the court directs the judgment to be entered in accordance with the statute.—P. 281.

12. **Practice in Civil Actions—Motion for New Trial—Verdict— Affidavit of Juror to Impeach.**

On a motion for a new trial, the affidavit of a juror cannot be received to impeach a verdict.—P. 282.

*Appeal from the District Court of Arapahoe County.*
*Hon. Frank T. Johnson, Judge.*

Action by John P. Sanderson against Jarvis Richards and The Bijou Ranch Company. From a judgment for plaintiff, defendants appeal.

*Affirmed.*

Messrs. RICHARDSON & HAWKINS, for appellants.

Messrs. WARD & WARD, for appellee.

Mr. JUSTICE GABBERT delivered the opinion of the court:

Appellee, as plaintiff, brought an action against appellants, as defendants, to recover damages resulting from the wrongful driving of cattle belonging to the plaintiff. There was judgment for plaintiff, from which the defendants appeal.

It appears from the pleadings and testimony that the parties to this action each owned, or had leased, in severalty, several thousand acres of land. For the most part these lands were alternate sections, the intervening sections being government land. The major part of the lands of plaintiff were north of Bijou creek, while the greater part of the lands of defendants were south of this stream. The lands of both parties were adjacent to each other except as separated by that belonging to the government; or, perhaps, more accurately speaking, were in the same general territory, with the principal holdings divided by Bijou creek, the different tracts of each being mostly separated by intervening alternate sections belonging to the government. Both parties were engaged in the business of keeping and raising cattle upon their respective lands and upon those adjacent, belonging to the United States. With a few exceptions which will be noted later, none

of these lands were fenced, and the cattle of plaintiff ranged over the entire territory within which the lands of the parties are situate, and in so doing grazed upon lands belonging to the defendants. The usual summer range of plaintiff's cattle was in a section of country south of Bijou creek, known as "Six Shooter Gulch." The testimony establishes beyond dispute, in fact, it is admitted by the defendants, that in the spring, summer and early autumn of 1901, they drove the cattle of the plaintiff from this locality off their lands, and, incidentally, over and across intervening government land, and beyond the territory within which these lands are included, for the purpose of preserving the herbage and grass upon their own lands.

The important question presented at the outset is, whether the defendants had the right to do so, it being contended on their behalf that they had, provided that in driving the cattle of plaintiff, reasonable care was exercised to prevent injury to them. An instruction to this effect was requested on behalf of the defendants, and refused. There was no error in this refusal. There is an implied license that the public lands of the United States shall be free to the people who seek to use them for the purpose of grazing stock, so long as the government does not forbid such use. To protect this use, Congress, in 1885, passed an Act the purpose of which was to prevent parties from monopolizing any part of the public domain.—23 U. S. 321-322. Our state laws bearing on the subject indicate the same policy. The privilege of grazing stock upon the public lands cannot be monopolized by any one, directly or indirectly, or under claim that he is but protecting his own lands.—*Buford v. Houtz,* 133 U. S. 320; *Taylor v. Buford,* 8 Utah 112; *Martin v. Platte Valley Sheep Co.,* 76 Pac. (Wyo.) 571.

The defendants had the right to drive the cattle of plaintiff from their own lands, exercising that degree of care to prevent injury thereto that would ordinarily be observed by a prudent person, but when the cattle crossed the line of the land of the defendants onto land belonging to the government, the right to drive them further ceased. In the government land, the rights of both parties were the same; the plaintiff had the right to have his cattle graze upon these lands in common with others who chose to exercise the same right. They constituted part of the usual summer range of his cattle. The defendants, under the claim that it was necessary in order to prevent the cattle returning to graze upon their lands, could not drive them from lands which they were lawfully upon. The principle of law derived from England, that the owner must prevent his stock from going upon the uninclosed lands of his neighbor, is not applicable to the vast regions of the public domain which have been open to the use of stock-raisers for more than a century. —*Morris v. Fraker,* 5 Colo. 425; *Willard v. Mathesus,* 7 Colo. 76; *Nuckolls v. Gaut,* 12 Colo. 361; *Pace v. Potter,* 85 Tex. 473.

And hence, the law does not recognize that the owner of uninclosed lands has any right to prevent such use of the public domain under claim that thereby he is protecting his own land. Were the law otherwise, ownership of a piece of land would enable the owner, under the guise of a right to prevent cattle grazing upon his land, to practically control a large area by driving such a distance as would be necessary to prevent their return to his land.

The complaint consisted of two counts—the first, under the common law, for negligently, wrongfully, and maliciously driving the cattle of the plaintiff; the second, under the statute, which provides, in

effect, that if any person shall maliciously drive cattle from their usual range, he shall be deemed guilty of a misdemeanor, and shall be liable to the party injured by such action in three times the amount of the actual injury occasioned by the commission of the offense.—§§ 1424-1425, 1 Mills' Ann. Stats.

The jury returned a verdict under the second count, and we will now consider the errors assigned on the refusal of the court to give other instructions requested. An instruction was refused to the effect that the statutes above referred to were highly penal in their nature, and that before the plaintiff could recover under these statutes, it was necessary for him to clearly prove that the defendants had actually violated the terms thereof. Whether or not this instruction correctly stated the law, as a general proposition, is not involved in this case. The defendants admitted that they had, or had caused, the cattle of the plaintiff to be willfully driven. It is undisputed that the vicinity from which they were driven was their usual range, and had been used and occupied by the plaintiffs for the purpose of keeping and raising cattle for more than twenty years; so that it was not necessary to instruct the jury, whatever might be the rule ordinarily, as to the *quantum* of proof which was required on the part of the plaintiff, to establish the fact that the defendants had willfully driven his cattle from their usual range.

Error is also assigned upon the refusal of the court to give an instruction defining the meaning of the word "range." In the circumstances of this case, there was no error in such refusal, for the reason, as above stated, that the testimony is undisputed that the government lands from which the cattle of plaintiff were driven by the defendants, was the usual range of such cattle. It is urged the testimony discloses that the range of plaintiff's cattle

was over a territory much greater than the vicinity from which they were driven; and by certain instructions requested, it was sought to advise the jury that no damages could be recovered under the statute for driving from one part of the range to another. Cattle unrestrained will range over a large scope of country. Where they formerly ranged, the condition of grass and water, the season of the year, and storms, will cause cattle following their natural tendency to roam more or less; but it is not necessary, in order to establish a cause of action under the statutes, that they be driven beyond the limits of the territory within which they may naturally range. Willful driving to any material extent from public domain within such territory to another locality, within or without such territory, is driving from their usual range.

An instruction was also requested to the effect that lands which are the subject of private ownership do not constitute a cattle range within the meaning of the law against the expressed will of the owner. We do not see how the refusal of this instruction could have in any manner prejudiced the defendants. There was no claim on the part of the plaintiff that he had the right to pasture his cattle on lands belonging to the defendants.

There was requested on the part of the defendants an instruction to the effect that they would not be liable to the plaintiff for driving his cattle off their private lands, if they did so without any unnecessary injury to such cattle. This was probably a correct statement of the law, but it appears from the instructions given that this proposition was clearly covered.

There were a number of other instructions requested and refused, which we do not deem it necessary to notice in detail. They are either disposed

of contrary to the contention of counsel for defendants by the views already expressed, or in the disposition of errors assigned to instructions given, or did not embrace issues in the case, were covered by those given, were incorrect in part, or the consideration thereof is not necessary because, by the verdict, the issues tendered by the first count were eliminated. Further, it might be said that the only real issue in the case, according to the undisputed facts, was the amount of the damage suffered by the plaintiff, and the action of the court in refusing the other instructions tendered was not prejudicial to the defendants on this proposition.

The defendants filed a cross-complaint by which they claimed they had been damaged through the plaintiff willfully and repeatedly turning his cattle upon their lands. The court withdrew from the consideration of the jury the claim for damages, as alleged in this cross-complaint. This was not error, because there was no testimony to sustain its averments. The plaintiff drove, upon lands belonging to himself, a number of his own cattle. These lands adjoined those of the defendants. The lands of both were within the same general inclosure, but there was no fence, or other barrier, between them, and the cattle wandered upon the lands of the defendants and depastured the same. This was not sufficient to establish a cause of action in favor of the defendants and against the plaintiff, because it was not tantamount to a willful driving of his cattle upon the lands of the defendants. One who turns his cattle out to graze, unrestrained, upon lands where he has a right to turn them, knowing that they will probably wander on the uninclosed premises of another, is under no obligation to prevent them entering upon such premises, and if they do so enter through following their natural instincts, he is not

responsible for the damages occasioned thereby.—
*Martin v. Platte Valley Sheep Co., supra.* This
proposition is clearly applicable to the case of one
who does no more than turn his cattle upon the
public domain to graze, even though he knows that,
following their natural instincts, they may wander
upon the uninclosed lands of his neighbor. The
plaintiff did turn his cattle upon public domain, in
the near vicinity of lands belonging to the defend-
ants. One half of the territory from which they
were driven either belonged to the plaintiff, or was
government land. The other half belonged to the
defendants. The plaintiff may have had good rea-
son to believe that his cattle would wander upon the
lands of the defendants. This would be natural for
the cattle to do. The lands embracing the public
domain and that of the defendants were alternate
sections covering a large area. He had a right to
place them on the public domain or his own land;
was under no obligation to restrain them from going
upon the lands of the defendants; and therefore he
would not be responsible to the latter if they did.
Such a case is entirely different from those cited by
counsel for defendants, where it appears that the
owner of stock willfully pastured it upon lands be-
longing to another, either by driving or herding
thereon.

In *Cosgriff v. Miller,* 68 Pac. (Wyo.) 206, it was
held that where stock is driven intentionally and
persistently upon the uninclosed lands of another
against his will, a trespass occurs for which he may
recover.

In *Lazarus v. Phelps,* 152 U. S. 81, it was held
that if the owner of land stock it with a greater
number of cattle then it could properly support, so
that, in order to obtain a proper amount of grass,
they would be forced to stray upon the adjoining

uninclosed lands of another, the duty to make compensation would be as plain as though the cattle had been driven there in the first instance.

The case at bar does not fall within the rule announced in either of these cases. There was no testimony which justified the submission of any such questions to the jury.

Error is assigned upon the action of the court in striking from instructions tendered on behalf of the defendants parts thereof, and as thus modified, given, to the effect that it was proper for the jury to consider whether or not the defendants, before driving the cattle of plaintiff, in good faith took legal advice and were governed thereby in what they did. This is not an action to recover exemplary, but for actual damages only. True, under the second count judgment is demanded for the penalty allowed by the statute, but this penalty can only be determined by the actual damages sustained. Advice of counsel does not bar an action, nor is it any defense to one for actual damages caused by a wrongful act, but is limited to mitigation of vindictive damages sought to be recovered.—*Cochran v. Tuttle,* 75 Ill. 361.

Error is also predicated upon an instruction by which the jury were advised that the term "maliciously," as used in the statute upon which the second count is based, did not necessarily mean ill-will towards the plaintiff, and that if it appeared from the evidence that the defendants willfully drove the cattle of plaintiff off public domain, which was their usual range, that they might infer that such driving was done maliciously. Maliciously, as used in the statute, means a wrongful act done intentionally, without just cause or excuse; and so, if the defendants willfully drove the cattle of plaintiff off such portion of the public domain as was their usual

range, without right so to do, such act was malicious, within the meaning of the law.

Other instructions given are also challenged, which it is not necessary to take up in detail, as the questions raised are disposed of in passing upon those considered.

Error is assigned on the rulings of the court on the reception and rejection of testimony. The two main questions in the case were, first, the driving of plaintiff's cattle from their usual range by defendants; and second, the damage to plaintiff as the result of such driving. The defendants admitted the driving, and even if the court erred in admitting or rejecting testimony tending to prove that defendants did drive the cattle, it was not prejudicial. A party cannot successfully complain of the admission or rejection of testimony which tends to prove an act that he himself admits he committed. With respect to the second proposition, we do not think the court committed prejudicial error in the reception or exclusion of testimony bearing on the subject of damages.

The final error assigned relates to the judgment. The jury returned a verdict under the second count, assessing the damages of plaintiff at the sum of $550. On this verdict the court rendered a judgment for $1,650.00—three times the amount of the damages assessed. Where a statute allows the successful party to recover a sum which is determined by multiplying the actual damages sustained a specified number of times, it is immaterial whether the jury return in their verdict the sum which the plaintiff is entitled to recover by virtue of the statute, or whether they return the actual damages, and the court directs the judgment to be entered in accordance with the statute. It must be certain, however, that the jury returned a verdict for the actual dam-

ages only, before the court would be authorized to render a judgment for the penalty. We think it clearly appears from the instructions in this case, that the jury returned a verdict for the actual damages which they found the plaintiff had sustained. It is true, that in stating the issues, the statute was referred to, and that in a subsequent instruction it appears the jury were advised that if the cause of action under the statute was established, the defendants would be liable to the plaintiff in three times the amount of the actual damages; but it nowhere appears that the jury were advised they could treble the damages. On the contrary, in another instruction they were told that if they found for the plaintiff under the second count, they should assess such damages as were actually suffered by him.

On the motion for a new trial, an affidavit of a juror was introduced which stated, in effect, that it was not the intention of the jury to find for the plaintiff under the second count, but under the first. It is well settled that the affidavit of a juror cannot be received to impeach a verdict.

The judgment of the district court is affirmed.

*Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE CAMPBELL concur.